THE DAVID BRADLEY MANUFACTURING COMPANY

*v.*

THE CHICAGO AND SOUTHERN TRACTION COMPANY.

*Opinion filed October 23, 1907.*

1. RAILROADS—*same corporation cannot be both a railroad and a street railway.* A corporation organized under the general Railroad act cannot be both a railroad and a street railway. (*Gillette* v. *Aurora Railways Co.* 228 Ill. 261, followed.)

2. SAME—*railroad corporation may amend charter by eliminating the word "street."* A corporation organized under the general Railroad act with the intention of operating an interurban road but which is inadvertently described in its articles of incorporation as a street railroad, has power, under the act of 1899, (Laws of 1899, p. 95,) to amend its charter by striking out the word "street" wherever it is used in such articles with reference to the description of the railroad.

3. SAME—*statute, and not articles of association, controls charter powers.* A corporation organized under the general Railroad act should be regarded and treated as a commercial railroad having the regular power of Eminent Domain, notwithstanding its articles of association state the purpose of the corporation to be to construct and operate a street railroad, since the statute, and not the statement in the charter with reference to the objects of the corporation, controls its charter powers.

4. EMINENT DOMAIN—*right of jury to disregard testimony as to value they believe is exaggerated.* It is not reversible error to instruct the jury, in condemnation, that if they believe, from the entire testimony and their inspection of the premises, that any witness has exaggerated or magnified the value of the land taken or the damages to the remaining land, on account of his interest in the suit or his prejudice or want of knowledge, experience or truthfulness, it is their duty to disregard the evidence of such witness in so far as the same is so unjustly magnified.

5. SAME—*when cross-examination as to financial standing of defendant is not improper.* In condemnation, where it is claimed that the land has a special value to the defendant for the future erection of buildings for the expansion of its manufacturing plant and it is proved that plans for new buildings had been prepared, it is not improper to show, on cross-examination, that the plans were delayed owing to the financial embarrassment of the company.

Appeal from the County Court of Kankakee county; the Hon. A. W. Deselm, Judge, presiding.

W. R. Hunter, for appellant:

A property owner has the right to contest petitioner's right to condemn private property, and when he does so the burden is thrown on the petitioner to maintain such right by proper proof. *Lieberman* v. *Rapid Transit Co.* 141 Ill. 140; *Railway Co.* v. *Sanitary District,* 218 id. 286.

Statutes conferring power of eminent domain are to be strictly construed and the exercise of the right kept in strict conformity to the power conferred. The petition should show a clear right to condemn the property described, and it should also show that it is for the use that is within the particular statute under which the proceedings are had. *Harvey* v. *Railway Co.* 174 Ill. 295.

In order to operate a street railway a corporation must be formed under the general Incorporation act and not under the Railroad act. Appellee having been formed for such purpose and electing to operate a street railway is bound by its election. *Ferry Co.* v. *Railway Co.* 107 Ill. 450.

Appellee having organized under the Railroad act for the purpose of operating a street railway, which could be done only under the general Incorporation act, after such election it has no power, under the Railroad act, to change or amend its charter at a meeting of the stockholders, changing the purposes for which it was originally organized. An attempt was made to organize appellee under both acts, and consequently it is a hybrid and has no legal existence under either act. The stockholders having discovered this, they attempted to change the object for which it was attempted to be created, by virtue of the act approved May 16, 1903. Laws of 1903, p. 131.

We make the point that this act was not intended to confer any right upon a railroad corporation organized under

the Railroad act to change the object for which it was cre-
ated, and that a railroad corporation cannot change its ob-
ject by any action of the stockholders, but it may increase
or decrease its capital stock by complying with the Railroad
and Warehouse act. Hurd's Stat. 1903, chap. 114, sec. 15.

There is no legal authority in Illinois to create a hybrid
corporation with the rights, powers and duties specified in
the articles of incorporation in the case at bar and required
by the Railroad and general Incorporation acts; and where
there cannot lawfully be a corporation created *de jure* there
cannot be one *de facto.* *Evenson* v. *Ellingson,* 67 Wis. 634;
*McTighe* v. *Construction Co.* 94 Ga. 306.

SMALL & BROCK, for appellee:

A corporation may be formed under the general Railway
act and build and operate a steam, elevated, electric or any
other kind of a railway. *Lieberman* v. *Rapid Transit Co.*
141 Ill. 140; *Malot* v. *Railway Co.* 108 Fed. Rep. 318;
*Wilder* v. *Traction Co.* 216 Ill. 527.

That appellee intends to operate a street railway in cities
and villages and an interurban through the country between
them does not prevent it from operating both under one char-
ter, under the Railway act. Any kind of a railroad can be
organized and operated under the Railway act of 1872 and
its subsequent amendments. *Lieberman* v. *Rapid Transit
Co.* 141 Ill. 140; *Malot* v. *Railway Co.* 108 Fed. Rep. 318.

That a charter contains words or phrases not required
under the law is mere surplusage. It is the law, not the
words contained in the charter, by which a corporation is
governed and controlled. Surplus words or phrases can
neither add to nor detract from the power given a corpora-
tion by the law it is incorporated under. *Fritts* v. *Loan Ass.*
186 Ill. 197; *Bixler* v. *Summerfield,* 195 id. 152; *People* v.
*Gas Trust Co.* 130 id. 268; *Traction Co.* v. *Chicago,* 199 id.
538; *Danville* v. *Water Co.* 178 id. 299.

Where a corporation is organized under the Railway law of Illinois, the fact that it is to be operated by electricity, or that it exercises the functions of a street railway in cities and villages, does not abridge its powers or take the corporation out of the general railroad statute. *Malot* v. *Railway Co.* 108 Fed. Rep. 318; *Lieberman* v. *Rapid Transit Co.* 141 Ill. 140.

The *prima facie* right of a corporation organized under railroad statutes of Illinois to condemn right of way for its road cannot be assailed in a collateral proceeding. This question can only be raised by *quo warranto*. *Railway Co.* v. *Railroad Co.* 112 Ill. 601; *Railroad Co.* v. *Dunbar*, 100 id. 110.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This was a proceeding commenced by appellee, against the appellant, in the county court of Kankakee county, under the Eminent Domain act, to condemn a strip of land for right of way purposes across a tract of land containing about twenty acres, located in the village of Bradley, in said county, owned by the appellant, and upon a portion of which was located the manufacturing plant of appellant. The land taken consisted of a strip twenty feet in width by twelve hundred feet in length, and contained fifty-five hundredths of an acre. The jury found the land taken to be of the value of $375 and the damage to the land not taken to be $1000. The court rendered judgment upon the verdict, and the manufacturing company has prosecuted an appeal to this court.

The appellee was organized under the provisions of the general Railroad act of 1872. (Hurd's Stat. 1905, chap. 114.) The articles of incorporation of the appellee recite: "The undersigned hereby organize a corporation under and by virtue of the laws of the State of Illinois, for the pur-

pose of acquiring, purchasing, constructing, owning, maintaining and operating a street railroad in accordance with the laws of said State." And paragraph 2 provides:

"*Second*—It is proposed to construct the said railroad from the city of Chicago to the city of Kankakee, and it is the purpose of this corporation to acquire, purchase, construct, own, maintain and operate a street railroad, with switches, side-tracks and turn-outs, upon and through the streets, avenues, alleys and other public ways of the following named cities and towns, with such rights, powers, privileges, immunities and franchises in the said cities and towns as may be conferred by law, to-wit: In Chicago, Harvey, Homewood and Matteson, in the county of Cook; in Peotone, in the county of Will; and in Manteno and Kankakee, in the county of Kankakee, all in the said State. And it is also the purpose of this corporation to acquire, purchase, construct, own, maintain and operate an interurban railway, by electricity or other power, from the said city of Chicago to, into, through and between the said cities and said towns of Harvey, Homewood, Matteson, Peotone, Manteno and Kankakee."

At the adjourned regular annual meeting of the stockholders of the appellee, held at its office in Chicago on December 28, 1905, at which all the capital stock of the appellee was present and voting, the following resolution was unanimously adopted:

"Whereas, heretofore, on the 14th day of November, 1904, there were executed, and hereafter, on the 10th day of November, 1904, duly filed in the office of the Secretary of State of the State of Illinois, articles of incorporation of this corporation as Chicago and Southern Traction Company, since which last named date this corporation, under the name aforesaid, has been engaged in locating and constructing a line of interurban railroad between the city of Chicago, Cook county, Illinois, and the city of Kankakee, in the county of Kankakee, Illinois; and whereas, it was and is the intention of this company, by its articles of incorporation, as aforesaid, to be and become a railway corporation under the general Railroad act of the State of Illinois, to the end that it may enjoy all the privileges created by the said act and be subject to all of

the obligations and liabilities thereof; and whereas, by inadvertence, the charter of this company called its said line of railroad a street railroad, for the reason that this company intended to pass through certain cities and villages in the State of Illinois and to lay its tracks upon certain of the public streets in such cities and villages; and whereas, it is now the desire of this corporation to eliminate the word 'street' whenever it occurs in said charter, for the purpose of defining more exactly the purposes of its incorporation; * * *

"*Be it therefore resolved,* by the stockholders of Chicago and Southern Traction Company, in annual stockholders' meeting duly assembled, that the articles of incorporation of said Chicago and Southern Traction Company be and the same are hereby amended by changing the words 'street railway' to 'railway,' (the word 'street' being expunged,) whenever the same occurs in said articles of incorporation."

The appellant, upon being brought into court, filed a traverse to the petition, in which it averred that the appellee was not authorized and empowered to construct and operate a line of railroad, and denied that it had any legal right to condemn private property for right of way purposes. The traverse was overruled, whereupon appellant filed a demurrer to said petition, which was also overruled, and having excepted to the action of the court in that regard, it now urges in this court, as grounds of reversal, that the appellee had no power to organize under the general Railroad act for the purpose of constructing a street railroad in the cities and villages through which its line proposed to pass and to construct and operate between said cities and villages an interurban railroad, as it is said a railroad corporation cannot be lawfully organized under the general Railroad act to construct and operate street and interurban railroads, and as appellee was not properly incorporated under said act it is without power to condemn land for right of way purposes, and that the court erred in declining to dismiss the petitioner's petition for condemnation.

Section 1 of the general Railroad act provides: "That any number of persons, not less than five, may become an incorporated company for the purpose of constructing and

operating any railroad in this State." (Hurd's Stat. 1905, p. 1564.) While the language above quoted is broad, it has been held (*Chicago and Southern Traction Co.* v. *Flaherty,* 222 Ill. 67, and *Gillette* v. *Aurora Railways Co.* 228 id. 261,) that the same corporation cannot be both a street railway corporation and a commercial railroad corporation. We think, however, the appellee had the power, under the provisions of the act of 1889, (Hurd's Stat. 1905, p. 507,) to amend its charter by eliminating therefrom the word "street" wherever it occurred therein, and that at the time the petition to condemn was filed, appellee was organized under the general Railroad act solely for the purpose of operating a commercial railroad from the city of Chicago to the city of Kankakee. (*Cairo, Vincennes and Chicago Railway Co.* v. *Woodyard,* 226 Ill. 331.) We are also of the opinion that if the amendment to appellee's charter made December 28, 1905, were disregarded, as the appellee was organized under the general Railroad act it should be considered and treated as a commercial railroad, as the statute under which it was organized would control as to its charter powers, rather than the statements found in its charter as to the objects of its organization. We think it clear, therefore, the appellee, by virtue of the statute under which it was organized, had the right to construct a commercial railroad from Chicago to Kankakee and to pass through the cities and villages along its route and to condemn real estate for right of way purposes, subject to the limitation that it could not construct its railroad longitudinally in the streets of cities and villages without the consent of such municipalities. We conclude, therefore, the appellee had the right to condemn the strip sought to be taken for right of way purposes, and that the court did not err in declining to dismiss the petition.

The legal principles here involved were fully considered by this court at its last term in *Gillette* v. *Aurora Railways Co. supra.*

The contention is made by the appellant that the amount of compensation and damages allowed to it by the jury are wholly inadequate to compensate it for the injury done to its plant by reason of the railroad of the appellant crossing its premises. The premises of appellant consisted of three village blocks and an intervening vacated street, and the right of way sought to be acquired is located upon said vacated street and the improvements of appellant are located upon its land situated west of the proposed right of way, and the property east of the right of way, including the right of way, is vacant and unimproved, and the railroad, when constructed, will be on a level with the surface of the ground. The jury viewed the premises, and while the witnesses who testified upon behalf of the respective parties differ greatly, as is usually the case in this class of cases, as to the compensation and damages which should be awarded the property owner, as the jury saw the premises and had a better opportunity than we to judge of the effect of the construction and operation of appellee's railroad across appellant's property, we are not disposed to disturb the judgment on the ground that the verdict did not award to the appellant adequate compensation and damages. The main contention upon this branch of the case by appellant is, that its property should be considered as a unit,—that is, as a whole,—and its witnesses estimated the value of the plant, with the entire tract of land upon which it was located, at from $325,000 to $350,000, and it is contended that as fifty-five hundredths of an acre, or 2.75 per cent of its property, is taken, it should receive as compensation for the strip taken 2.75 per cent of the value of the entire plant, including all its lands, and some of its witnesses placed its damages to the property not taken at from $25,000 to $30,-000, while the witnesses for the appellee placed the value of the strip taken at $500 per acre, and stated that there would be but little, if any, damages to the portion not taken. The court instructed the jury, upon behalf of the appellant, that

if they found the strip sought to be taken was a part of an entire tract, which tract was used by appellant for manufacturing purposes, and for such purposes said strip had a greater value than the bare land as part of the entire tract, under the law it was their duty to allow the defendant such special value of the strip as the evidence showed it to be worth when considered in connection with the entire tract. We think it evident, therefore, that the view of the appellant that it was entitled to have the jury consider the strip proposed to be taken as a part of the entire tract was fairly presented to the jury, and that it has no just ground of complaint that its view that the strip of land sought to be taken should be considered as a part of its entire tract of land was not submitted to the jury.

The appellant also sought to show that the ownership of its vacant property, including the strip sought to be taken, was necessary to the future growth and expansion of its manufacturing business, and that to sever its property by constructing and operating a railroad across the same would greatly damage the entire property. The witnesses of appellant were fully examined upon that view of the case, and the jury had such testimony before them when they viewed the property and arrived at their verdict. That view of the case was therefore also before the jury. We cannot see that this case involves the application of any new principles of law in the assessment of compensation or damages, but think the case was fully and fairly submitted to the jury upon all the questions involved.

It is next complained that the court misdirected the jury as to the law. A special complaint is made of appellee's fifteenth given instruction, which reads as follows:

"You are further instructed that if you believe, from the entire testimony and from your inspection of the premises, that any witness has magnified or exaggerated the value of the land taken or the damages to the land not taken, on account of his interest in the suit or his prejudice or want

of knowledge or experience or truthfulness, then you have the right, and it is your duty, to disregard the evidence of such witness in so far as the same is unjustly magnified or unjustly increased, either as to the value of the land taken or the damages to the property of defendant not taken."

This instruction was given and approved in *Kiernan* v. *Chicago, Santa Fe and California Railway Co.* 123 Ill. 188, (p. 197,) and a similar instruction was approved in *Goss Printing Press Co.* v. *Lempke,* 191 Ill. 199. What was said in the *Kiernan case* applies with equal force here and needs not be repeated. We do not think the giving of appellee's fifteenth instruction constituted reversible error.

The appellant complains of other instructions given on behalf of the appellee. We think, however, the instructions given, when considered as a whole, were as favorable to the appellant as the law would permit, and that the court did not commit reversible error, as against the appellant, in instructing the jury.

It is next urged the court erred in refusing to give to the jury appellant's eighteenth instruction. The appellant insisted that the premises in question had a special value to it for expansion purposes,—that is, its future need of more space, by reason of the growth of its business, for building purposes, etc.,—and to sustain this view it proved, by its president and other witnesses, that plans for new buildings to be erected upon the vacant land east of the strip proposed to be taken had been formulated and drafted. The plans, if any, were not offered in evidence, and upon the cross-examination of its president it appeared the plans referred to had been made several years prior to the commencement of this suit and that the appellant had been financially embarrassed for some months. This cross-examination we think was proper to test the good faith of the claim put forward by the appellant that it had been and was then contemplating the enlargement and expansion of its plant and business and that said claim was not made with

a view to enhance the amount of damages which it might sustain by the construction of appellee's railroad, which it was contended would postpone, and in part prevent, the carrying into effect of the said expansion plans. The appellant's eighteenth instruction asked the court to eliminate such cross-examination from the consideration of the jury. While, ordinarily, the financial standing of a party to a condemnation suit would be entirely foreign to the issue on trial in such suit before the jury, in this case the cross-examination of the president of the appellant we think, under the circumstances, proper, and that the court did not err in declining to give to the jury the appellant's eighteenth instruction.

Finding no reversible error in this record the judgment of the county court will be affirmed.

*Judgment affirmed.*