ED ERICKSON, Appellee, v. MAPLE BLOCK COAL COMPANY, Appellant.

MASTER AND SERVANT: ''Working Place'' of Miner. A miner
1   must keep his "working place" safe, and is negligent if he does
not. The mine owner must keep the rest of the mine safe, and
is negligent if he does not. A miner's "working place" is his
*immediate* place of work—not necessarily the entire *room* in
which he is working. So held where the miner was injured by
the falling of an insecurely propped room, at a point some 13
feet from the miner's immediate working place. (Sec. 2489-13a,
Code Supp., 1913.)

TRIAL: Verdicts in Disregard of Instructions. Verdicts in disre-
2   gard of *incorrect* instructions will be set aside.

MASTER AND SERVANT: Statutory Duty Non-Avoidable by Con-
3   tract. A mine owner's statutory duty to keep safe that part of
his mine outside the miner's "working place" may not be con-
trolled by contract with the miner. So held where the con-
tract called for double-timbering the roof only in case the miner
called for such double-timbering. (Sec. 2489-13a, Code Supp.,
1913.)

*Appeal from Polk District Court.*—THOS. J. GUTHRIE, Judge.

APRIL 4, 1918.

REHEARING DENIED JUNE 27, 1918.

ACTION to recover damages for personal injury. The opinion states the facts. Judgment for the plaintiff. Defendant appeals.—*Reversed.*

*Stipp, Perry, Bannister & Starzinger,* for appellant.

*John T. Clarkson,* for appellee.

Gaynor, J.—I.    This action is to recover damages for personal injury alleged to have been sustained by the plaintiff while employed in the defendant's mine as a coal miner.

1. MASTER AND
SERVANT:
"working
place" of
miner.

The allegations on which plaintiff predicates his right to recover are that he was injured by a fall of slate from the roof of the mine in which he was working; that the defendant was not operating under the Iowa Workmen's Compensation Law.

The answer of the defendant was that plaintiff was injured in his working place, and where it was his duty to inspect the roof and to make the same safe; and that the defendant was in no manner negligent.

The cause was submitted to the jury, and a verdict returned for the plaintiff.    Defendant appeals, and submits but two questions:    (1) The court erred in overruling defendant's motion to direct a verdict, made at the close of the testimony; (2) that the verdict is contrary to the law, as given in the instructions of the court.

The mine in question was operated by a shaft.    The mouth of the room in which plaintiff was working was about 9 feet deep and 8 feet wide.    Then it opened, from 22 to 25 feet wide.    The room, at the time of the accident, had been driven in about 40 feet from the outside corner of the entry. The track on one side was about 4 feet from the left rib of the room.    There were two rows of props, one on the rib side and one on the other side, called the gob row.    These rows of props were from 6 to 8 inches from the track on either side, leaving room for a car to pass between them. At the time of the accident, the end of the track was about 15 feet from the working face of the coal.

Plaintiff was paid for mining coal at a stipulated price

per ton, and, in addition, received compensation for "brush-
ing," according to the thickness he was required to take up.
The roof was a slate roof. The plaintiff had experienced
trouble in keeping the roof propped. His testimony was
that it was not a very good working piece of coal; that he
had spoken to the foreman with reference to the roof, and
had told him that it was in a dangerous and treacherous
condition, and asked him for another place, saying that he
could not properly work there and make anything and keep
the place secure. He showed him the dangerous condition,
the rock and rock spar that ran a little angling across the
roadway, and the lower slate between the boulders, and
asked for another place to work; and he testifies that the
foreman said he would give him another place, within a few
days. Plaintiff says that this was three or more weeks be-
fore the accident; that the foreman repeated this promise,
a day or two before the accident. He further testified that,
if there had been cross-bars or planking over the roadway,
it would have held the portion of the roof that fell and
caught him.

On this particular morning, plaintiff went to work at
about 8 o'clock, and had been in the room about thirty min-
utes when he was injured. He had gone into the room, and
had gone back to the entry to get his tools, and was return-
ing to his working place, and was about two feet from the
end of the rails toward the face of the mine, when the roof
fell and caught him.

The rules of the mine and the written contract between
the company and its employees, under which the mine was
operated, are as follows:

"Responsibilities, Timbering, and Care of Places.

"(a) In accordance with the state law, the company
shall furnish all necessary timbers, and the miner shall keep
his room securely propped. If a miner working in a room
fails to securely prop the same, or neglects to prop as di-

rected by the pit foreman, or carelessly shoots down the props or timbers, and a fall of slate occurs through such failure, neglect, or carelessness, he shall immediately clear his roadway of such falls of slate and do all necessary retimbering, and in case of his neglect to do so, the company may do such work and charge the expense thereof to such miner.

"(b)    In case the room has been properly timbered, as above set forth, and the roof, from any cause, becomes so heavy as to require double timbering, the company shall, when notified by the miner, do the necessary work to protect the roadway."

It appears that the plaintiff propped this room, and that props were placed in the usual manner, as the work of removing the coal progressed; that these props supported the roof while the work progressed.

Chapter 8-A, Part I, Section 2477-m, in Subdivision d, Supplement to the Code, 1913, provides:

"In actions by an employee against an employer for personal injury sustained arising out of and in the course of the employment where the employer has elected to reject the provisions of this act, it shall be presumed that the injury to the employee was the direct result and growing out of the negligence of the employer; and that such negligence was the proximate cause of the injury; and in such cases the burden of proof shall rest upon the employer to rebut the presumption of negligence."

Section 2489-16a provides:

"It shall be the duty of each employee to examine his working place upon entering the same and shall not commence to mine or load coal or other mineral until it is made safe.    Each miner or other employee employed in a mine shall securely prop and timber the roof of his working place therein and shall obey any order or orders given by the superintendent or mine foreman relating to the width of the working place and to the security of the mine in the part

thereof where he is at work.  *  *  *  When draw-slate or other like material is over the coal, he shall see to it that proper timbers are placed thereunder for his safety before working under the same."

Section 2489-13a of the same statute provides:

"It shall be the duty of the mine foreman or pit boss in charge of any mine or part thereof to make careful inspection of the mine from day to day  *  *  *  and at such other times as in his judgment conditions may require."

It will be noted that the duty rests upon the employee to examine his working place,—the place in which he is engaged in his work; that it is his duty not to commence to mine coal in his working place or load the coal until that place is made safe; and to this end, it is made his duty to prop and timber the roof of his working place. The room comes as a natural and proximate result of the work of the miner in removing the coal. The coal is removed by the company from the room as it is gotten in readiness by the miner, for moving. As the coal is mined and removed, the room enlarges. Tracks are then laid in the room, running towards the face of the mine to the place where the miner is engaged in mining the coal. On these tracks cars are run, into which the coal is loaded after it is mined. These tracks may be several feet long, depending upon the extent to which the miner has carried his work. The actual working place of the miner moves forward with his work. The tracks follow towards the face of the mine at which the miner is working. The working place of the miner does not necessarily include the whole room. The working place is the place where he is engaged in his work. While engaged in his work, it is his duty to timber and make safe the place where he is working. But as he passes on in his work, and the company assumes to occupy the room with its tracks and its mules and its cars, the duty to continue the support of the roof back of the working place rests

upon the company. It is then no longer the working place of the miner, in the sense in which these terms are used in the statute. Experience shows that, though the roof may be properly secured at the time the work is in progress, it may become defective and unsafe, and the props which made it safe for the miner in removing the coal no longer make it safe for those who use or traverse the room; so it i. made the duty of the company, through its foreman or pit boss, to inspect these roofs and see that they are kept in reasonably safe condition. The slate that fell and injured this plaintiff fell from the roof of this mine over the roadway, and not in the working place of the miner. True, he was 2 or 2½ feet beyond the rail, at the time he was injured; but the cause of the injury was the falling of the slate from the roof of the mine, and not over the miner's working place. As we understand the record, he was going to his working place, at the time he was injured. The foreman had been warned by this plaintiff of the dangerous condition of the roof over the roadway. The plaintiff had requested that he be assigned to some other place to work, because of the dangerous condition of the roof over this roadway, and had been promised another place to work. He testified that he had spoken to the mine foreman with reference to the roof, and told him that it was dangerous and in a treacherous condition, and asked him for another place, telling him that the conditions were such that he could not properly work there and make anything, and keep the place secure. He testified that he showed the foreman the dangerous condition; and this, three or more weeks before the accident, and again, a day or two before the accident. He further testified that, if there had been cross-timbers or planking over this roadway, the roof would not have fallen and caught him.

In view of what was said by us in *Mitchell v. Swanwood Coal Co.*, 182 Iowa 1001, we think there was a fair fact

question for the jury in this record, and that the court did not err in overruling defendant's motion for a directed verdict.    We would not, however, be able to say this if the law were as laid down in the sixth instruction given by the court to the jury.    This instruction is not a correct exposition of the law of the case, as we will hereafter attempt to show.

II. The second convention of the defendant on this appeal is that the verdict is against the law, as laid down by the court in its instructions to the jury.

We think this contention must be sustained.    The court, in its sixth instruction to the jury, said:

"To find the defendant guilty of negligence, you should not determine that question as a matter of mere speculation, but should determine it from the evidence; and in this case, the only question of negligence for you to determine, under the evidence and law, is whether or not the defendant company should have placed double timbers or cross-bars over the roadway.    On this question, you are instructed that, under the evidence in this case, the duty to place cross-bars or timbers to protect the roadway of a room in a mine only arises on notification or request therefor on the part of the miner; and, if you find from the evidence that no such notification or request was given to the defendant by the plaintiff, then said duty did not arise, and you should inquire no further, but return your verdict for the defendant.    However, if you find such request or notification was given, then you should determine whether the accident happened at such a place as that, if the roadway had been double-timbered, as notified or requested, it would have prevented the happening of the accident; and if you find the accident happened at a place not within the roadway, then you should inquire no further, but return your verdict for the defendant."

2. TRIAL: verdicts in disregard of instructions.

This instruction—which is the law of the case—said to the jury that, if the defendant company was not notified or requested by the plaintiff to double-timber or place cross-bars or timbers over the roadway to protect the employees rightfully using the roadway, there could be no recovery in the case. The instruction assumes that, no matter how negligent the company might have been in allowing the roof over the roadway to become dangerous, no matter how dangerous the room might become from such conditions, no duty rested upon the company to timber the roof or make it safe, until notified or requested to do so by the plaintiff; that, even though the defendant were negligent in allowing the roof over the roadway to become in a condition rendering it unsafe for the employees using the room, no liability would attach for a failure to repair or remedy the same, until the company was notified or requested by this plaintiff to repair or remedy the same. Negligence presupposes a duty. If there is no duty to do a thing, there can be no liability predicated on a failure to do it; and this instruction plainly said to the jury that there was no duty to place cross-bars or timbers to protect the roadway of the room, until the miner (plaintiff in this case) notified, or requested that it be repaired. There is no evidence that plaintiff notified the company or requested the company to place cross-bars or timbers to protect this roadway. Under this instruction, then, there was but one thing for the jury to do: that is, to return a verdict for the defendant.

It has been frequently held that the instructions given by the court are the law of the case, whether right or wrong, and the jury are bound to follow them, and if they do not follow them, their verdict cannot be sustained. As said in *Baird v. C. R. I. & P. R. Co.*, 55 Iowa 121, 124:

"So far as this appeal is concerned, this instruction embodies the law of the case, which it was the duty of the

*3. MASTER AND SERVANT: statutory duty non-avoidable by contract.*

jury to follow; and, if the general verdict is not in harmony with this instruction, it should have been set aside."

In *Savery v. Busick,* 11 Iowa 487, the court said:

"Whatever may be our view of the law of this case, it is impossible for us to express it, or consider the questions presented, without going behind the action of the jury in trampling upon the authority of the court, and thereby giving some countenance to their assumption. This we are unwilling to do, even by the slightest implication. It is no more competent for the jury to usurp the powers of the court than it is for the court to interfere with their province in the ascertainment of facts."

Under the law as laid down in this case in the instruction referred to, the jury could not find a verdict for the plaintiff and support it by the evidence offered. The case must, therefore, be reversed; and this though we think the court was wrong in saying that no duty rested upon the defendant to timber this roadway until notified or requested by the plaintiff to do so. For the error pointed out, the case is—*Reversed.*

PRESTON, C. J., LADD and STEVENS, JJ., concur.