C. PFANNEBECKER, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

No. 39452.

JUNE 24, 1929.

*J. G. Gamble, F. W. Miller,* and *Stockman & Baker,* for appellant.

*Willcockson & Willcockson,* for appellee.

KINDIG, J.—The Chicago, Rock Island & Pacific Railway Company, the defendant and appellant, maintains, for the purpose of supporting its railway tracks, a dirt embankment in an east and west direction across German Creek and its valley in Keokuk County. German Creek and its valley extend in a variable north and south direction, and the water in the stream flows southward. Stretching across this expanse for approximately 2,000 feet, the fill throughout its length is 20 or 25 feet above the level of the adjacent land.

Before 1893, appellant rested its tracks on a trestle 900 feet long, over said creek and valley. During that year, the trestle was removed, and the embankment aforesaid substituted therefor, except that a bridge was placed across German Creek, in lieu of that part of the former trestle. Said bridge is 91 to 92 feet between the abutments at the water line, and 32 feet above the bottom of the stream. Appellee's land is immediately to the west of German Creek and north of the railway embankment. Thus located, the appellee owns approximately 160 acres. It, together with about 80 acres adjoining, constitutes a basin on the west side of the creek and north of the embankment. This basin is low and flat. West of this land, at a distance of about one-half mile from the creek, are hills. So, too, there are hills north of the acreage, approximately 240 rods from the embankment. Also directly east of the German Creek are other hills. Along and abutting upon the north side of appellant's embankment are borrow pits, 4 or 5 feet deep, running westward from German Creek 590 feet. These pits were formed when appellant removed the dirt to build the embankment. At the west point on these pits there is a depression or draw, which extends northwestward through appellee's land. Appellant contends that this swale does not continue and never has continued south of the railway embankment. On the other hand, appellee insists that, before

the embankment was constructed, the waters from the northwest flowed through the depression or channel southward under the trestle into German Creek below.

But appellee urges that, after the date when the said railway fill was made, the flood waters from the northwest have not been thus able to flow in their natural course. Continuing his complaint, appellee further says that the waters from the northwest during floods could not be carried along the north side of the embankment and out under the bridge in German Creek, because that structure itself is not sufficiently large to accommodate the creek waters, in addition to the flow from the northwest. Hence, in the years 1924 and 1926, respectively, heavy rains occurred, which caused the water to rush from the north and west hills; and, because it could not get through the embankment, the flow backed up over appellee's cultivated field, pasture, and hay meadow. As a result thereof, it is asserted by appellee that his oats field, cornfield, hay meadow, and pasture were damaged during the two years in the sum of $1,028, and, in this action, that amount is sought, together with 6 per cent interest thereon.

In opposition to appellee's statements and allegations, the appellant generally denies the same, and further pleads that the crop, pasture, and hay damage, if any, was due to the former's contributory negligence, in that he constructed a dam in the borrow pit, in order to procure ice for family use.

I. Many propositions are presented for consideration in the briefs and arguments, but we think it necessary at this time to review but one of them; for, under appellee's pleadings and the evidence offered to support the same, when limited by the court's instructions, there can be no recovery.

Relief is sought on the theory that the embankment and the inadequate bridge are the sole sources of the flood loss, because it is asserted the water is thereby obstructed in its flow and cast back over appellee's land. Proof was offered to sustain that contention. Nevertheless, under the instructions, the appellee could not succeed if it affirmatively appears in the record that appellee's farm to some extent would have been overflowed and the crops, pasture, or hay damaged by the southward-flowing flood waters from German Creek, as distinguished from the backed-up waters held by the embankment or insufficient bridge. There is constantly running through appellee's pleadings, his evidence,

and his arguments the thought that the waters here concerned are divided into two general classes: First, that which actively flows southward in German Creek and the territory adjacent thereto; and second, that which came from the northwest, struck the embankment aforesaid, could not escape with the other waters through the bridge, and then was thrown back over appellee's land. This being true, appellee could not succeed; for he is entitled to recovery, within the instructions, if at all, only for the injury caused by the alleged obstructions. If, then, part of the loss was due to the overflow of German Creek, appellee can only obtain from appellant the additional or added damages for the crop, pasture, and hay-land destruction resulting from the backwater. *McAdams v. Davis*, 200 Iowa 204; *McAdams v. Chicago, R. I. & P. R. Co.*, 200 Iowa 732.

II. Notation is here made that the district court followed the issues as pleaded, and told the jury, in effect, that there could be no recovery if any of appellee's loss was due to the overflow of German Creek, as distinguished from the waters flowing from the northwest, which were stopped by the embankment and turned over the land. Included within the instructions was a reference to the theory that the waters from the northwest stopped by the embankment might proceed eastward along the same into German Creek, and, because the bridge was inadequate, cause that stream to rise backward over its banks, and thereby damage appellee's land. Throughout the instructions, the proximate cause issue is presented. It may be found in the statement of appellee's claim. Again, it appears in the issues and required proof, and finally the thought is contained in the following instruction:

"If you find that the damage to plaintiff's crop, or a part thereof, was caused partly from the water held back by the embankment from the natural watercourse which has been referred to herein (the one that plaintiff alleges used to exist before the fill, and constituted part of the depression coming down from the northwest, which swale or course was a considerable distance west of the present bridge), and partly from the overflow of German Creek, then as to any such damage you must not find for the plaintiff. Any such damage would be wholly speculative,

under the evidence in this case, and as to such damage there can be no recovery by the plaintiff.''

Again, in another instruction, the principle is applied to the cause of action arising from the inadequate bridge.

Clearly, the court had in mind all of appellee's contentions that the waters from the northwest struck the embankment and then reversed their course back over the field. Two distinct waters are therein recognized by the district court—one relates to the natural overflow of German Creek, and the other to the back water caused by the flood from the northwest, striking the embankment or failing to escape through the bridge and reversing its course. The district court was of the opinion that a jury question existed, concerning whether the embankment or bridge, by backing up the water, wholly caused appellee's loss. Also, that tribunal understood that appellee had not segregated and separately proven the damages caused by the embankment or bridge and those due to the overflow of German Creek. Consequently, it was incumbent upon the jury to follow that instruction. Right or wrong, instructions must be followed, for they become the law of the case.

''Courts, and not juries, are to determine the law, and when this is done, it is not for the fact-finding body to disregard it.'' *Love v. Fort Dodge, D. M. & S. R. Co.*, 207 Iowa 1278.

See, also, *Erickson v. Maple Block Coal Co.*, 183 Iowa 1292; *Nichols v. Chicago, R. I. & P. R. Co.*, 69 Iowa 154; *Bushnell v. Chicago & N. W. R. Co.*, 69 Iowa 620; *Browne v. Hickie*, 68 Iowa 330; *Graham v. McGeoch*, 61 Iowa 51.

Notwithstanding the jury's duty in this respect, it ignored the instructions, and returned a verdict for the appellee although the record conclusively revealed the fact that some damages, at least, would have occurred during German Creek's overflow, regardless of the water that backed from the embankment or bridge.

III. These legal principles are not disputed by appellee; but, in support of the jury's verdict and the judgment entered thereon, he argues that there is foundation in the record for the finding that the entire damage and loss arose because of the embankment or bridge alone. To put the thought in another way, appellee maintains that there is a conflict in the evidence on this

subject. After a study of all the record, including the exhibits and contour map, we are constrained to hold, as before suggested, that it conclusively appears the German Creek overflowed, and caused at least part of the damage.

A brief review of the record will suffice. An admission is made by appellee himself, indicating that German Creek overflowed, at least in the springtime, before the embankment was constructed. It was said by appellee, nevertheless, that he lost no crops before the year 1893, when the dirt fill was made. Perhaps the rains during the summer seasons in the earlier years, while appellee had crops on this land, were not so excessive as those occurring in 1924 and 1926. Manifestly, under appellee's admissions, if rains produced as much water as the snow and ice, there would necessarily be an overflow.

Moreover, appellee's witnesses declared that the land in question was in a low bottom. Arthur Brunt, an engineer, testifying for appellee, said:

"Mr. Pfannebecker's [appellee's] land is approximately flat, north of the Rock Island bridge. * * * Back a little ways to the west of the creek, it [the land] is lower than the creek bank itself."

Another witness for appellee continued:

"The banks of German Creek are not very high for a distance of 300 or 400 feet north and south of the Rock Island right of way."

No water could flow east of German Creek, because of the immediate hills. When coming from the northwest, the water naturally flowed south and east. Tributaries flow into German Creek from the northeast and the north or west. Wolf Creek flows therein from the east. All the slopes of this drainage area are steep and abrupt. Under the undisputed record, the waters from German Creek and its tributaries concentrate at a point 400 or 500 feet north of appellant's railway bridge. Such point of concentration is just above the low banks along appellee's land. Generally speaking, German Creek winds, rather than proceeds on a straight line. Wherefore, overflowing is more likely. Appellee and his witnesses agree that German Creek overflowed at the times in question, but it is argued the record does not dis-

close it overran the banks along appellee's field. Proceeding with the discussion, appellee states his position in these words:

"If it [the cause of the damage] had been water coming from the north and an overflow of German Creek from the east and north, then the water would have flowed on south, and swept the crops of grain into German Creek; but that is not the evidence."

Important at this juncture, in view of appellee's argument just quoted, is the fact that, under the record, grain shocks standing in appellee's field were, as a matter of fact, washed from their location southward directly against the embankment. Every witness, including appellee, admitted that the fields below the bridge were inundated and crops destroyed. Numerous witnesses, including farmers and railroad employees, emphatically stated that this stream always overflowed, both before and after the embankment was constructed.

Likewise, without denial it conclusively was shown that the lands north of appellee's property were covered with water from German Creek, and the crops thereby injured. Some of these farms, at least, were higher than appellee's land. Apparently no witness claims to have observed that the water backing from the embankment or bridge and not the overflow from German Creek, actually did the damage, although appellee's witness Blaise did say:

"I observed the water overflowing from German Creek in July and August, 1926, in the vicinity of Pfannebecker's [appellee's] land. It was too deep to try to get into with an automobile. The water was on my land, 10 or 15 rods. * * * My land is higher than Pfannebecker's [appellee's]."

An abundance of evidence, wholly uncontradicted, indicates that, during the flood under consideration, German Creek overflowed its banks, and destroyed crops above and below appellee's land. Undoubtedly, appellee's farm was as low as any north of the railroad bridge, for it is so indicated by the testimony of the witnesses. The witness Blaise saw the "water overflowing from German Creek."

Resultantly, under all the circumstances, there is no basis in the record to say that German Creek did not overflow some part

of appellee's land and injure crops. Regardless of this fact, however, the jury disobeyed the trial court's instructions, and found for the appellee, contrary thereto. Had the appellee allocated his damages,—that is, proved what part thereof was caused by the backwater and which portion was due to the creek's overflow,—he would be entitled to recover, under proper instructions. But here we do not have those facts or such instructions. Of necessity, then, the appellant must have a new trial.

The judgment of the district court is reversed.—*Reversed.*

ALBERT, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.

WAGNER, J., takes no part.