IN RE ESTATE OF DELOS D. STEVENS.

IVAN P. YEISLEY et al., Claimants, Appellees, v. MERCHANTS NATIONAL BANK, Executor, Defendant, Appellant.

No. 43790.

APRIL 6, 1937.

Chas. J. Haas, for appellant.

Wm. W. Crissman, W. J. Barngrover, and John M. Redmond, for appellees.

MITCHELL, J.—Delos D. Stevens died testate in the late evening of April 1, 1935. His will and testament was duly admitted to probate, and the Merchants National Bank of Cedar Rapids was appointed and qualified as executor.

On June 7, 1935, the claimants, Ivan P. Yeisley and Elizabeth Yeisley, who are husband and wife, filed their claim against the estate of the deceased, for personal services. In the original claim which was filed they alleged that by oral arrange-

ment and agreement Mrs. Yeisley was to attend to decedent at his home during the day, to do the cooking and take care of the house, and Ivan P. Yeisley, the husband, was to remain with the decedent thru the nights, to protect and care for him; and for this service there was an agreed payment to each of $1.00 per day. Shortly before the case was reached for trial the claimants abandoned the original theory of their claim against the estate and filed an amendment, wherein they set up that they had performed certain work at the request of Dr. Stevens and had furnished an automobile for his use, upon the oral promise and agreement made by decedent with the claimants to compensate them therefor from his estate and to so provide in his last will and testament; that the Doctor had failed to make any such provision in his last will and testament; and that the estate is indebted to them in the amount of $1,087.45, for which amount they prayed judgment, and for costs.

There was a trial to a jury, which returned a verdict in favor of the claimants in the amount of $530. From this verdict the estate has appealed.

Delos D. Stevens lived in the village of Paralta. He was advanced in years, being around 83 years of age, but his mind was clear up to the time of his death. He was a doctor by profession and was commonly known as Dr. Stevens, but he had not been engaged in the practice for many years preceding his death. He had also been admitted to the bar. His wife died in January of 1932. After her death he continued to live in the same residence, and made arrangements with the Yeisleys in regard to looking after his wants and needs.

It will be noted from the pleadings that the Yeisleys first claimed there was a specific understanding in regard to this oral arrangement; that the wife was to do certain things and was to receive the sum of $1 per day for her services; that the husband was to do certain things and was to receive the sum of $1 per day. This theory, however, was abandoned by claimants when they filed their amendment. The undisputed record shows that Dr. Stevens paid these claimants monthly, on the last day of the month, $1 a day apiece; that they were paid up to March 28, 1935, which was just three days before the doctor's death. On the reverse side of each check was a receipt, as follows:

"This is a receipt in full of all demands to this date."

(Blank date inserted)

We are not confronted here, however, with a case in which there is a specific contract; that is not now the theory of the claimants. They claim they rendered services and that there was an agreement to pay for the services rendered.

Many errors are alleged. One is that the verdict was clearly contrary to the instructions and if the instructions had been followed no verdict would have been returned against appellant.

In their brief and argument appellees concede that the instructions given by the trial court are the law of the case, and, whether right or wrong, it was the duty of the jury to follow them. We do not pass upon the correctness of these instructions; they were given by the court, and, as stated by appellees, "right or wrong, they are the law of the case."

Instruction No. 14 is as follows:

"You will allow the defendant for all payments made as shown by the evidence and admitted in the pleadings, and allow the aggregate sum thereof as a credit or offset against any amount you may find in favor of the claimants, if you should allow them any amount under these Instructions, and if the aggregate amount of such payments is equal to or greater than the amount you find to be the value of claimants' services as shown by the evidence, if you find they did render such services, then your verdict should be for the defendant."

The undisputed evidence shows that the claimants were paid $1,830 during the period covered by their claim. They only claimed $1,087.45 for the entire services rendered. It is at once apparent that the claimants under the 14th instruction were not entitled to recover anything. Had the jury followed this instruction, as it should have, the verdict would have been for appellant instead of for appellees.

Instruction No. 15 given to the jury is as follows:

"It is admitted that the claimants were in the employ of the deceased from February, 1932, to April 2, 1935, at a salary or wage of $1 per day for each, and that monthly payments of such wage were paid by decedent.

"Before the claimants can be allowed any recovery they must show by a preponderance of the evidence that the services

for which they claim were not·included in the said contract of hiring. Unless they have so shown your verdict should be for the defendant.''

This instruction was followed by instruction No. 16:

''You are instructed that while the claimants allege in their petition and claim that the services for which they contracted and for which they were paid $1.00 a day each, was that Elizabeth Yeisley was to attend at decedent's home days and do the cooking and take care of his household, and Ivan P. Yeisley was to remain with the decedent through the nights and care for him, these allegations are denied by the executor.

''On this point you are instructed that there is no evidence as to the contract for services or as to the nature of the services rendered thereunder, or that such services were rendered, for which the claimants admit they were paid, and such allegations not being supported by proof, you should give them no weight or consideration.''

It will be noted that under instruction 15 the jury was charged that, before claimants could be allowed to recover, they must show by a preponderance of the evidence that the services for which they claimed, were not included in the said contract of hiring. This is followed by instruction 16, which specifically says to the jury that there is no evidence of the contract of hiring or as to the nature of the service rendered thereunder, or that said services were rendered; and, as there is no evidence to support the allegations, the jury is to give them no weight or consideration. Thus, if the jury followed the court's instructions, it could not allow the claimants to recover until they showed by competent proof that the services for which they were claiming were not included in the original contract of hiring. Then the court said to the jury that there was no proof of the original contract of hiring or of the nature of the services rendered thereunder, or that said services were rendered. In view of these two instructions, which, ''right or wrong'', are the law of the case, it would be impossible for the jury to return a verdict for the claimants, and when it did so return a verdict it of necessity disregarded the instructions of the court.

After the verdict was returned a motion for new trial was filed by the estate, setting up as grounds, among others, that the

jury had disregarded the instructions of the court. The lower court overruled this motion. In doing so it was in error, for, under the instructions given, which the jury was bound to follow, there was no possible way that a verdict could have been returned for the claimants.

It therefore follows that this case is reversed and remanded. —Reversed and remanded.

RICHARDS, C. J., and all Justices concur.