Roy M. HUTCHINSON and Barbara M. Hutchinson, Appellees,

v.

Donald J. MAIWURM and Barbara J. Maiwurm, Appellees,

and

City of Fort Dodge, Iowa, and Fort Dodge Airport Commission, Appellants.

No. 52986.

Supreme Court of Iowa.

Nov. 12, 1968.

Donald J. Mitchell, City Atty., and Alan Loth, Fort Dodge, for appellants.

Johnson, Burnquist & McCormick, Fort Dodge, for appellees Hutchinson.

Kirchner & Kirchner and William L. Peters, Fort Dodge, for appellees Maiwurm.

STUART, Justice.

Condemnor has appealed from a judgment on a jury verdict in favor of condemnee. Thirty-one assigned errors are argued in seven divisions. For convenience we will refer to the parties in the singular. The following sketch shows the relative positions of the land here involved.

```
                               N
 -----------------------------------------------------------------
                    County Road
  ------   --------------------          ------------------------
        | Tract| Tract |               R     Fort Dodge
        |  2   |   1   |               o     Airport
        |      |       |               a
        |      |       |               d
        |      |       |
         ------ -------                   \  Northwest
                                           \    Southeast
                                            \     Runway
                                             \
                                              \
```

In 1960 plaintiff and another person purchased tract 1 containing a little more than two acres of land west of the Fort Dodge airport and separated therefrom by a road and other property. On tract 1 is a dog kennel, a garage, a house and fences. A dog boarding, training and supply business with resident manager is operating thereon. In November 1964 plaintiff bought his partner's interest. At that time the tract was mortgaged for $16,500. He paid $3000 for the partner's equity in the real estate. Therefore, the value placed on tract 1 at that time was $22,500.

Plaintiff tried to purchase tract 2 consisting of about 2¼ acres when he acquired tract 1. The owner would not sell until December 1964. In January 1965, plaintiff contracted to buy tract 2 for $6000. It was unimproved and was purchased for use in connection with the kennel business on tract 1.

On March 30, 1965 defendant filed an application for condemnation to acquire the fee title to tract 2. Tract 1 was not condemned. The appraisal commissioners awarded plaintiff $6497. Plaintiff brought an action in three counts. Count I was in mandamus to require defendant to condemn tract 1 as well as tract 2. Count II sought to enjoin defendant from condemning tract 2 on the ground that it was not being taken for the public use. Count III was an appeal from the condemnation award seeking damages of $60,000 for a partial taking of a single unit composed of tract 1 and tract 2.

Counts I and II were submitted separately to Judge Harris who dismissed both counts. Count III was tried to a jury. Witnesses for plaintiff, basing their evidence on a partial taking and the difference in before and after values, placed the damages within a range of $31,500 to $60,000. Witnesses for defendant, basing their evidence on the value of tract 2 as a separate unit placed the damages within a range of $5850–$6000. The jury returned a verdict for $31,500.

I. Defendant contends Judge Harris' ruling on count I is res judicata on the question of the unity of tracts 1 and 2 and the trial court erred in permitting evidence on that point, in instructing on damages from a partial taking, and in refusing to grant a new trial on these same grounds.

The evidence offered in the jury trial on the unity of these two tracts was basically the same as that presented in the mandamus action. In the mandamus action, the trial court said: "[T]he court is asked to issue a writ of mandamus compelling the defendants to include Tract 1 in the proceedings. Plaintiffs urge that, because all the property was acquired for the same purpose by them, it is one tract and must be considered and condemned together. Particular note is made of the fact that both plaintiffs and defendants have submitted this issue to the Court for determination. It seems to be the rule, at least in the reverse situations, that this question is normally to be determined by the jury in connection with the award. See Hoeft v. Iowa, 221 Iowa 694, 266 N.W. 571 [104 A.L.R. 1008], and especially the cases there cited. The Supreme Court points out the criteria for the determination, at least in the reverse situation, and is swayed by the fact that the properties had been purchased at different times and had not been actually used together in a single operation. Attention is invited to 29A C.J.S. [Eminent Domain § 140] 591 as follows: 'There is no single rule or principle * * * for determining the unity of lands for (this) purpose. * * * While generally there

must be unity of title, contiguity of use and unity of use, under certain circumstances the presence of all these unities is not essential. Usually unity of use is given the greatest emphasis, and has been called the controlling factor.'

"The facts in the instant case do not square with any of the three, unity of title, contiguity of use or even unity of use."

■■ Res judicata may be either direct or collateral. If the second suit is between the same parties and involved the same cause of action a judgment on the merits in the earlier case constitutes a complete bar to all matters which might have been litigated as well as the matters litigated. Jordan v. Stuart Creamery, Inc., 258 Iowa 1, 5, 137 N.W.2d 259, 261, and citations.

Count I was an action in mandamus to compel the condemnor to take all plaintiff's property consisting of tracts 1 and 2. Count III was an action to recover damages to all plaintiff's property because of the taking of tract 2. It clearly appears that we are not concerned in these two counts with the same cause of action and we are dealing with collateral estoppel.

■ If the second suit between the same parties involves a different cause of action, any determination of law or fact necessary or essential to the judgment in the first suit is conclusive of that issue in the second suit. Jordan v. Stuart Creamery, Inc., 258 Iowa 1, 6, 137 N.W.2d 259, 262; In re Estate of Ramsay, 240 Iowa 50, 60, 35 N.W.2d 651, 656; King City, Mo., etc. v. Southern Surety Co., 212 Iowa 1230, 1238–1239, 238 N.W. 93, 97; Yates v. United States, 354 U.S. 298, 336, 77 S.Ct. 1064, 1 L.Ed.2d 1356; Hurley v. Beech Aircraft Corp., 355 F.2d 517, 522; Nelson v. Swing-A-Way Manufacturing Co., 8 Cir., 266 F.2d 184, 186–187; Louisiana-Mississippi P. Const. Corp. v. Thornton, 5 Cir., 213 F.2d 388, 390–391; Berry v. City of Santa Barbara, 248 Cal.App.2d 438, 56 Cal.Rptr. 553, 558; Leitch v. Hine,

393 Ill. 211, 220, 66 N.E.2d 90, 95; Abeles v. Wurdack (Mo.), 285 S.W.2d 544, 547; State v. Nance, 77 N.M. 39, 43, 419 P.2d 242, 245; Willis v. Willis, 48 Wyo. 403, 419, 49 P.2d 670, 674.

As pointed out above, the trial court in ruling on the mandamus action found there was not sufficient unity of title, unity of use or contiguity of use to consider tracts 1 and 2 as a unit. The tests used by the trial court are the tests used in determining unity for the purpose of valuing the tracts as a whole in attempting to arrive at the before and after values in a condemnation matter. 29A C.J.S. Eminent Domain § 140, p. 591.

It therefore appears that the specific issue in the second suit was adjudicated in the first. However, such findings or conclusions in count I are not conclusive as to the same issues in count III unless they were essential to the judgment entered in count I.

"It is frequently laid down as a general rule that a judgment is not binding or conclusive as to facts or questions of law, although put in issue and actually tried and expressly determined by the court in the former action, where such matters were immaterial or unessential to the determination of the real and decisive issue." Anno: 133 A.L.R. 840. Jordan v. Stuart Creamery, Inc., 258 Iowa 1, 6, 137 N.W.2d 259, 261–262; E. I. du Pont de Nemours and Co. v. Union Carbide Corp., 7 Cir., 369 F.2d 242, 245; Cambria v. Jeffery, 307 Mass. 49, 50, 29 N.E.2d 555; Abeles v. Wurdack, (Mo.) 285 S.W.2d 544, 547; State v. Nance, 77 N.M. 39, 43, 419 P.2d 242, 245; Willis v. Willis, 48 Wyo. 403, 424, 49 P.2d 670, 676.

It is the application of these well established principles to the facts in the particular case which poses the difficulty.

Count I was primarily based on the allegation that the taking of tract 2 completely destroyed the usefulness of tract 1 and sought to compel its condemnation.

"Unless the injury to the remaining land is so severe as to render it useless for any purpose, the condemnor taking part of the lands is not bound to pay the full value of the entire tract, even if, by reason of injury to such land, the owner has abandoned all use of the property." 27 Am.Jur.2d 128, Eminent Domain, § 311. Thus, the unity required to compel the condemnor to take both properties is quite different and much more difficult to establish than unity which would permit evaluation of the whole for the purpose of establishing severance damages.

It was not necessary for the trial court to determine the unity of these two tracts according to the requirements for unity for evaluation purposes. He could very well have concluded there was not sufficient unity for the mandamus action without using the tests he did use. The conclusions of law which were essential to the determination of the mandamus action were: "The court cannot say that the defendants exceeded their statutory jurisdiction in condemning the property or in limiting it to tract 2" and "defendants are clearly acting within the scope of their authority and can neither be restrained from acting nor compelled to expand upon their action as the plaintiffs request".

Does the fact that the test used in reaching these conclusions applied to count III rather than count I, make his findings in count I binding on the court and jury in count III?

We have not been cited any cases factually similar and have found none in our own research on this question. A. W. Scott in an article entitled Collateral Estoppel by Judgment in 56 Harv.L.Rev. 1, 29, cautions us that "The doctrine of collateral estoppel, which applies where the cause of action is different, has a much more limited application. In its limited application it is based upon a sound public policy. Care must be exercised in its application to see that it works no injustice." It does not seem just to hold the findings

in this mandamus action binding in the condemnation action.

Analogous cases convince us this is not a proper place to apply collateral estoppel.

Schofield v. Rideout, 233 Wis. 550, 290 N.W. 155, 133 A.L.R. 834, was an action to compel the reconveyance of a one-half interest in real estate and for an accounting for rent. Plaintiff claimed the conveyance had been made for the purpose of sale under an agreement to deliver plaintiff one-half of purchase price. The trial court in a former action decided that such agreement had been made but that defendant had used due diligence in trying to sell the property and had not breached the agreement. In this action defendant claimed as a defense that there was no such agreement and the conveyance was for consideration. The trial court held the finding there was such agreement in the prior case res judicata. The Wisconsin Court said:

"The rule is well established that a finding in a former case does not create an estoppel if the fact found did not necessarily determine that case. The judgment must rest upon the fact found or the fact is open to relitigation. (Citing authorities)

"The judgment in the former case rested on the finding that there was no breach of the agreement found by Judge Reid. That finding was the only finding that was essential to support the judgment. The judgment would have been supported had Judge Reid not made the findings as to the agreement and consideration, but merely said that if an agreement was made as plaintiff claimed the plaintiff was not entitled to recover because the defendant Rideout had used due diligence to sell and nothing had so far occurred to render him liable on plaintiff's own theory." 233 Wis. at 555, 290 N.W. at 157–158, 133 A.L.R. at 837–838.

In Willis v. Willis, 48 Wyo. 403, 49 P.2d 670, plaintiff claiming to be a common law wife brought an action for divorce and alimony. The court held for defendant and found, among other things, that plaintiff was a servant for pay. She claimed this finding was res judicata in a subsequent action to recover wages. The court said: "Whether or not the plaintiff was a servant for pay was in no sense within the scope and purpose of the action, and could at most have a bearing only as evidence whether or not the marriage existed. It is certain that it was not necessary to decide that point. Nor was it a material fact. It was not vital to the case; it was not the point upon which the case turned. The judgment in the divorce action can be wholly correct, whether that fact existed or not. * * * It was a matter wholly collateral and incidental in the divorce action, and defendant's admission in that connection could not, accordingly, constitute an estoppel in the case at bar, but could be used only as evidence in establishing plaintiff's cause of action herein." 48 Wyo. at 426–427, 49 P.2d at 677.

In Abeles v. Wurdack (Mo.), 285 S.W.2d 544, plaintiff brought an action to recover on quantum meruit for the reasonable value of his services in obtaining a purchaser of stock. A previous suit for commission based on express contract had resulted in a judgment against him. The court therein found expressly there was no contract and that "plaintiff was neither the procuring nor the inducing cause of that sale". The Missouri court held this and other findings were not res judicata in the suit on quantum meruit.

Karameros v. Luther, 279 N.Y. 87, 17 N.E.2d 779, was an action to declare a 1931 marriage null and void. One defense was that the issue was res judicata. In a previous separation action which was dismissed for failure to prove a cause of action, the trial court found the parties were duly married in New York in 1931 although that issue had been withdrawn by consent. The court said: "The question of the marriage, however, as it turned out was not a material

issue, and, therefore, the finding in that case is not binding on the court in the case at bar, where the question of marriage is the material issue. * * * [T]here was no necessity for any determination of the validity of the marriage." 279 N.Y. at 92, 17 N.E.2d at 781.

In State v. Nance, 77 N.M. 39, 419 P.2d 242, defendant and another had been sentenced to the prison on pleas of guilty to armed robbery. As a result of a habeas corpus action, they were returned to stand trial on the same offense. The trial judge in the habeas corpus matter had concluded: "the statements made by the petitioners to the authorities were not voluntary statements". It is claimed this conclusion is res judicata on second trial and the statements should have been excluded. The New Mexico court said: "Thus, the questions of whether statements were made by these defendants to officers and whether such statements were voluntary were not ultimate facts in that proceeding without which the judgment would lack support in an essential particular. The petitioners were successful in the habeas corpus proceeding because the court found that they had not been afforded effective counsel at trial. Any finding that their confessions were involuntary was gratuitous and not necessary to the decision. We conclude that the question of whether the statements or confessions of these defendants admitted in evidence in the case now before us was not made res judicata by the judgment in the habeas corpus proceeding." 77 N.M. at 44, 419 P.2d at 245.

On the strength of these authorities, we hold the findings and conclusions in the mandamus action were not binding upon the court in the appeal from the condemnation award.

II. Defendant argues that even if we hold the prior determination was not res judicata, under the law of this case, there was insufficient evidence of unity of use to make a question for the jury. The trial court instructed the jury:

"9. Before you may apply plaintiffs' measure of damages, plaintiffs must prove by a preponderance of the evidence that at the time of the condemnation Tracts 1 and 2 in fact constituted one entire parcel used together by plaintiffs. If plaintiffs have done so, then you should apply their measure of damages. But if plaintiffs have not done so and it appears that although Tracts 1 and 2 were contiguous they were separate parcels, then you most apply defendants measure of damages.

"10. Further on this question, plaintiffs must establish that Tracts 1 and 2 were, at the time of the condemnation, in effect one parcel and so used by plaintiffs. In this connection you may consider what the evidence shows as to the uses to which the two tracts were being put at the time and the length of such uses; whether such uses were sufficient to combine the two tracts into one parcel; the location of the tracts, their previous and then character, the personal property thereon or want thereof, the improvements on the tracts or want thereof, the ownership of the tracts, the length of time of such ownership, and their physical combination or separation; whether one tract was dependent on the other in plaintiffs' operations; whether one tract was used for separate and distinct purposes from the other; whether the tracts had such relation of adaptation, convenience, and actual and permanent use as to make enjoyment of one tract reasonably and substantially necessary to the enjoyment of the other in the most advantageous manner in plaintiffs' business at the time; whether the two tracts were of such character and so located that the market value of either would be reduced if the other were taken; and any further evidence directly bearing on the issue whether the two tracts were in fact one entire parcel or two distinct parcels.

"10-A. Further on this issue, Tracts 1 and 2 would not be one entire parcel merely because plaintiffs may have intended to combine them someday in the future, if they were not in fact combined as one parcel

on the condemnation date as I have already explained.

"If plaintiffs used Tract 2 for training dogs prior to plaintiffs' purchase of that tract, such prior use of a neighbor's land would not alone combine the two tracts into one parcel either at the time or thereafter. But such prior use, if it did occur, may be considered by you for the bearing you deem it may have, if any, on whether plaintiffs did in fact combine the two tracts into one parcel after they did purchase Tract 2.

"Prior to January 26, 1965, Tracts 1 and 2 were separate parcels of land, and they are presumed to have remained such thereafter unless and until plaintiffs have proved by a preponderance of the evidence that they had in fact combined the two tracts into one parcel at the time of condemnation."

The instructions are in accord with the general rule in Iowa and most other states. Westbrook v. Muscatine N. & S. Ry. Co., 115 Iowa 106, 111, 88 N.W. 202, 203; Hoyt v. Chicago, M. & St. P. Ry. Co., 117 Iowa 296, 299–300, 90 N.W. 724, 726; Cole Investment Co. v. United States, 9 Cir., 258 F.2d 203, 205; City of Menlo Park v. Artino, 151 Cal.App.2d 261, 265, 311 P.2d 135, 141; Peck v. Superior Short Line Railway Co., 36 Minn. 343, 345, 31 N.W. 217, 218; Barnes v. North Carolina State Highway Commission, 250 N.C. 378, 385, 109 S.E.2d 219, 225; Deercreek Local Board of Education, etc. v. Payne, 86 Ohio App. 319, 322, 88 N.E.2d 226, 228; 29A C.J.S. Eminent Domain § 140, p. 591; Anno: 6 A.L.R.2d 1199; Rezzolla, Unity of Use and Unity of Ownership in Eminent Domain, 70 Dick. L.Rev. 139; But cf. In re Elgart's Appeal, 395 Pa. 343, 346, 149 A.2d 641, 643.

■ Plaintiff did not appeal from these instructions and they have become the law of the case. In re Estate of Stevens, 223 Iowa 369, 372, 272 N.W. 426, 428; Pfannebecker v. Chicago, R. I. & P. R. Co., 208 Iowa 752, 756, 226 N.W. 161, 162. Plaintiff concedes he has the burden of proving unity, but claims the evidence was sufficient to create a jury question under these instructions.

■ Plaintiff bought tract 2 to use in connection with the dog supply and kennel business conducted on tract 1. He only had possession about 2½ winter months prior to the condemnation on March 30, 1965. At that time the properties were separated by a fence. He had used the lot to train dogs prior to his ownership without permission or objection of the owner. There is no evidence he so used the property between January and March. The former owner had removed an old building and plaintiff's employees had taken out some underbrush and cut a few trees. He had contacted a dirt mover, a building contractor and the finance officer of the bank preparatory to building kennels and a storage building on tract 2 prior to condemnation.

We do not believe the evidence of the use of tract 2 on the date of condemnation was sufficient to raise a jury question of the unity of its use with tract 1 under the instructions given. The only actual use to which tract 2 had been subjected during plaintiff's ownership was the clearing of brush and the cutting of trees. Such action bore no peculiar relationship to the business plaintiff was conducting on tract 1.

The decision is made more difficult by the fact that the evidence clearly established plaintiff's intention to use tract 2 as part of the dog kennel and dog supply operation, and it undoubtedly would have been so used in a short time. We need not decide whether these circumstances would justify a departure from the general rule. See West Virginia Pulp & Paper Co. v. United States, 4 Cir., 200 F.2d 100, 103; Baetjer v. United States, 1 Cir., 143 F.2d 391, 395; David Bradley Mfg. Co. v. Chicago & Southern Traction Co., 229 Ill. 170, 82 N.E. 210, 212, because the instructions clearly required present, actual and permanent use. Proof of such use was lacking.

We therefore hold there was no evidence from which the jury could find tract 2 was used together with tract 1 at the time

of the condemnation and the trial court erred in submitting the issue of severance damages to the jury.

III. Three of the remaining divisions assign error in the admission of evidence of before or after values based on allegedly improper factors. We need not discuss them in view of our holding in Division II that the evidence was not sufficient to make a jury question of severance damages. The questions do not occur when tract 2 is valued as a separate unit.

Since the case is reversed for other reasons we need not consider whether the award made was excessive.

For the reasons stated in Division II the trial court is reversed and the case is remanded for new trial.

Reversed and remanded.

All Justices concur except RAWLINGS and BECKER, JJ., who dissent from Division II and the result.