**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Appellee,**

v.

**D.J.I., Appellant.**

No. 95–1801.

Supreme Court of Iowa.

March 20, 1996.

As Amended on Denial of Rehearing April 17, 1996.

Mark McCormick of Belin Harris Lamson McCormick, P.C., Des Moines, for appellant.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

McGIVERIN, Chief Justice.

In this attorney disciplinary matter, we must determine whether our grievance commission correctly ruled that amended Iowa supreme court rule 118.7 can be used to invoke issue preclusion, concerning proof of the charges in the present disciplinary case, based on a prior district court civil judgment against respondent attorney. The commission ruled that it can be so used. On interlocutory appeal, we affirm.

I. *Background facts.* Respondent D.J.I. is an attorney licensed to practice law in Iowa. Respondent possesses experience and alleged expertise in income tax law, particularly with respect to investments in tax shelters and minimizing federal and state income taxes. In January 1984, Lorne and Kathleen Scharnberg, husband and wife, contacted respondent to represent them as their attorney in connection with personal income tax and other legal matters. Respondent agreed to represent the Scharnbergs and advise them on various financial matters.

Prior to respondent entering into an attorney-client relationship with the Scharnbergs in February 1984, respondent and Scharnbergs had contractual ties concerning real estate in Des Moines purchased on contract by the Scharnbergs in 1982. Scharnbergs had purchased a personal residence from Greg G. Griffith and Kenneth L. Stone d/b/a Classic Homes on a real estate installment contract. In the attorney-client context, respondent represented Griffith and Stone at the real estate closing. At the time of purchase, the home was subject to a construction mortgage with United Federal Savings Bank of Iowa (UFSB). Scharnbergs did not assume payment of the mortgage.

At some point after the transaction, Classic Homes failed to make mortgage payments to UFSB and respondent acquired Classic Homes' vendor's interest in the Scharnberg real estate contract by quit claim deed. Scharnbergs made their subsequent contract payments to respondent until August 1987.

In April and May 1984, during the time the Scharnbergs were clients of respondent and were making payments to respondent on the real estate installment contract, Scharnbergs entered into four separate real estate transactions, two with respondent and two with Griffith. Griffith was also a client of respondent during all material times to this dispute and respondent advised Griffith concerning Griffith's transactions with the Scharnbergs.

As a result of respondent's advice and counsel, Scharnbergs made four investments:

(1) On April 5, 1984, Scharnbergs agreed to purchase 20 units of the Crossing, an 88–unit condominium project being developed by Greg Griffith d/b/a Griffith Land & Cattle Co., for a total purchase price of $1,074,233, of which $53,500 was paid down and the balance to be paid on completion of the 20 units and delivery of an abstract showing merchantable title;

(2) On April 14, 1984, Scharnbergs purchased from respondent for $15,000 a 15% partnership interest in Isaacson Partners III, itself a 25% partner in Cedar Ridge Investment Partnership which was operating and purchasing, under a long-term installment contract, a shopping center mall in Urbandale, Iowa;

(3) On May 15, 1984, Scharnbergs purchased from respondent and his partner for $117,500 a residential duplex property in Clive, Iowa; and

(4) On or about May 29, 1984, Scharnbergs purchased for $29,500 stock in a corporation previously organized by respondent for Griffith known as Execucharter, Inc., which was purchasing a 53–foot Hatteras fishing boat in Florida.

In time, each of the above investments proved to be financially unsound, leaving the Scharnbergs economic victims of the investments. As a result, civil litigation resulted between respondent, Scharnbergs and several other parties.

## II. *Background proceedings.*

A. *The district court civil action.* In February 1988, UFSB filed an action in district court to foreclose on its construction mortgage on the real property Scharnbergs originally purchased from Classic Homes. UFSB named several defendants in its action including respondent, Scharnbergs, Classic Homes, Griffith, and Stone. In its foreclosure action, UFSB did not seek a personal judgment against either respondent or Scharnbergs as neither had any liability on the mortgage.

In addition to filing an answer to UFSB's petition, respondent filed a crossclaim against Scharnbergs, eventually seeking a personal judgment against Scharnbergs for contract damages concerning the home in which respondent held the vendor's interest.

In their counterclaim against respondent, Scharnbergs made several allegations against respondent including that he committed fraud, misrepresentation, violations of the Iowa code of professional responsibility, legal malpractice, constructive fraud and conspiracy to defraud when giving legal recommendations and advice concerning the investments set out above.

In his reply to Scharnberg's counterclaim, respondent contended Scharnbergs were at fault for their alleged damages, if any, and denied the claims asserted by the Scharnbergs.

The case was tried to the district court without a jury.

In January 1991, in a seventy-five page opinion the court ruled on, among other issues, Scharnbergs' counterclaim against respondent. The district court concluded respondent committed fraud, legal malpractice, constructive fraud and conspiracy to defraud and entered judgment against respondent and in favor of the Scharnbergs for $107,000, plus interest, in actual damages and $45,000 in punitive damages. In so ruling, the court concluded respondent violated DR 5–104(A), DR 5–105(B), and DR 5–105(C) of the Iowa Code of Professional Responsibility for Lawyers.

Neither respondent nor the Scharnbergs appealed the judgment to our court. The district court judgment thus became a final judgment.

B. *The disciplinary action.* In July 1995, four and one-half years after the district court entered the civil judgment discussed above against respondent, the Iowa supreme court Board of professional ethics and conduct (Board) filed a complaint against respondent with the grievance commission based upon respondent's representation of the Scharnbergs at various times during 1984 and the identical transactions that were the subject of the 1991 district court judgment. *See* Iowa Sup.Ct.R. 118.5. Attached to the complaint and incorporated therein by reference was the 1991 district court judgment. In its complaint, the Board alleged respon-

dent violated certain provisions of the Iowa Code of Professional Responsibility for Lawyers, specifically that

(1) respondent violated DR 5–104(A) by entering into business transactions with the Scharnbergs with respect to Isaacson Partners III and the Clive duplex investments without making full disclosure of how his professional judgment on their behalf might be affected by his own interests;[1]

(2) respondent violated DR 5–105(B) and DR 5–105(C) in advising Scharnbergs with respect to their business transactions (the Crossing and Execucharter) with his other client, Greg Griffith, without making full disclosure to the Scharnbergs of how his professional judgment on their behalf might be affected by Griffith's or his own interests;[2] and

(3) respondent violated DR 1–102(A)(4) by making affirmative misrepresentations and by omitting to inform Scharnbergs of facts material to their investments in the Crossing, Execucharter, Isaacson Partners III, and the Clive duplex.[3]

█ The Board bears the burden of proving its allegations by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Wunschel,* 461 N.W.2d 840, 845 (Iowa 1990).

In its complaint, the Board put the respondent on notice that it would seek to prove its allegations at the hearing on the complaint by relying on the 1991 district court judgment against respondent and the principles of issue preclusion as now authorized for use by amended Iowa supreme court rule 118.7.

After filing an answer to the Board's complaint, in which respondent admitted the 1991 district court judgment, respondent filed a motion for adjudication of law points with the grievance commission. *See* Iowa R.Civ.P. 105. In its motion, respondent claimed the principles of issue preclusion were inapplicable here for three reasons:

(a) the amended supreme court rule 118.7 allowing issue preclusion to be used in lawyer discipline cases was not in effect at the time of the judgment asserted to be preclusive and is not retroactive in its effect;

(b) the issue concerning whether respondent violated the Iowa code of professional responsibility is not identical to the punitive damages issue determined in the 1991 judgment; and

(c) the district court's conclusion in the Scharnberg litigation that respondent violated the Iowa code of professional responsibility was not necessary and essential to the issues determined in the resulting judgment.[4]

In response, the Board claimed respondent's grounds to prevent issue preclusion in the disciplinary action were without merit. The Board contended that the January 3, 1994, amendment to court rule 118.7 applies retroactively, the 1991 litigation involved identical issues as raised by the Board in its disciplinary complaint against respondent, and the district court's conclusion that respondent violated various disciplinary rules was necessary and essential to the court's conclusion that respondent was liable for pu-

---

1. DR 5–104(A) states "[a] lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

2. DR 5–105(B) states "[a] lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment...."

   DR 5–105(C) states "[a] lawyer shall not continue multiple employment if the exercise of professional judgment in behalf of a client will be or

is likely to be adversely affected by the representation of another client...."

3. DR 1–102(A)(4) states "[a] lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

4. On appeal, respondent raises procedural due process and general fairness arguments to fight application of issue preclusion in the pending disciplinary action. Although not presented in its motion for adjudication of law points before the commission, similar arguments were alluded to in respondent's brief in support of the motion. Therefore, we consider those arguments preserved for appeal.

nitive damages to the Scharnbergs, his clients.

The grievance commission filed a ruling on respondent's motion for adjudication of law points. The commission concluded that court rule 118.7, as amended, applies retroactively, thus allowing the Board to prove that various conclusions of law in the 1991 judgment have preclusive effect in the disciplinary action filed by the Board against respondent. The commission also concluded the four prerequisites for issue preclusion set forth in *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981), existed and, therefore, ordered that respondent was precluded from relitigating the issues of fraud, misrepresentation, breach of loyalty and conflict of interest in the pending disciplinary case.

Finally, the commission concluded application of rule 118.7 did not deny respondent a hearing on the above issues or prevent him from presenting mitigating evidence regarding any sanction to be imposed.

We granted respondent's application for interlocutory appeal of the grievance commission's ruling on his motion for adjudication of law points. *See* Iowa R.App.P. 2.

III. *Scope and standard of review.* An adjudication of law points is confined to a determination of legal matters on uncontroverted pleadings. *See* Iowa R.Civ.P. 105; *IMT Ins. Co. v. Myer*, 283 N.W.2d 316, 318 (Iowa 1979). In addition, we consider respondent's answer to the Board's request for admissions part of the record on appeal. *See* Iowa R.Civ.P. 127, 128; *Gollehon, Schemmer & Assocs. v. Fairway–Bettendorf Assocs.*, 268 N.W.2d 200, 200 (Iowa 1978) ("The facts upon which the [ruling on the motion for] adjudication of law points was made were established by plaintiff's response to defendant bank's request for admissions."); *see also Committee on Professional Ethics & Conduct v. Conzett*, 476 N.W.2d 43, 44 (Iowa 1991) (matters in a request for admissions, if neither denied nor otherwise objected to, may be relied upon by the committee to prove its case against respondent); *Committee on Professional Ethics & Conduct v. Freed*, 341 N.W.2d 757, 759 (Iowa 1983) (same).

■ We review rulings and reports of the grievance commission de novo. *See* Iowa Sup.Ct.R. 118.10.

IV. *Issue preclusion amendment to supreme court rule 118.7: retroactivity and application.* Effective on January 3, 1994, we amended Iowa supreme court rule 118.7 to state the principles of issue preclusion, also known as collateral estoppel, may be used by either party in a lawyer discipline case if:

> (1) The *issue has been resolved in a civil proceeding* that resulted in a final judgment, even if the Iowa Supreme Court Board of Professional Ethics and Conduct was not a party to the prior proceeding;

> (2) The *burden of proof* in the prior proceeding was *greater than a mere preponderance* of the evidence; and

> (3) The party seeking preclusive effect has given written notice to the opposing party, not less than ten days prior to the hearing, of the party's intention to invoke issue preclusion.

(Emphasis added.) The parties dispute whether this rule applies retroactively or prospectively only.

If we conclude the rule has prospective application only, the parties agree the amendment does not empower the Board to prove its disciplinary case against respondent through issue preclusion. *Cf. Committee on Professional Ethics & Conduct v. Wright*, 178 N.W.2d 749, 750 (Iowa 1970) (stating transcript of prior civil proceeding admissible in subsequent disciplinary action but noting "[t]he conclusions reached by the jury and our affirmation in the prior civil case are not binding or conclusive on the issues examined here"). If, on the other hand, we find the amendment also applies retroactively from its effective date, then we must consider the principles of issue preclusion, as did the grievance commission, and determine the effect of the 1991 district court judgment on the pending disciplinary case against the respondent.

Respondent contends the issue preclusion amendment to rule 118.7 is not applicable in the Board's disciplinary action against respondent primarily because respondent was

not on notice at the time of the civil action that issue preclusion could be asserted in a later disciplinary proceeding if he lost the case.

In defense of the grievance commission's ruling that the issue preclusion amendment applies retroactively, the Board contends its conclusion is justified pursuant to supreme court rule 118.21.

■ First, we recognize the general rule that a statute is presumed to be prospective in its operation unless *expressly* made retrospective or retroactive. Iowa Code § 4.5 (1995). This same general rule applies to our construction of court rules. *See Smith v. Korf, Diehl, Clayton & Cleverley*, 302 N.W.2d 137, 138 (Iowa 1981) (rules of appellate procedure); *Anderson v. Goodyear Tire & Rubber Co.*, 259 N.W.2d 814, 817–18 (Iowa 1977) (rules of civil procedure).

■ We have expressly made the rules governing proceedings before the grievance commission retroactive in nature in certain situations:

> These rules shall have prospective and *retrospective application* to all alleged violations, complaints, hearings, and dispositions thereof on which a *hearing has not actually been commenced* before the grievance commission prior to the effective date of these rules.

Iowa Sup.Ct.R. 118.21 (emphasis added). The record shows a hearing on the merits of the disciplinary complaint filed by the Board against respondent has not been commenced and has been stayed pending resolution of this interlocutory appeal.

■ Second, we believe the prerequisites to the application of amended rule 118.7 are clearly satisfied by the facts in the present case because (1) the issues of fraud, misrepresentation, breach of loyalty and con-

flict of interest in the pending disciplinary case were inherent to and resolved in the prior civil proceeding that resulted in a judgment against respondent, (2) the burden of proof in the prior civil proceeding to prove fraud, which included misrepresentation, breach of loyalty and conflict of interest, was a preponderance of clear, satisfactory and convincing evidence,[5] and (3) the party seeking preclusive effect, the Board, gave the respondent timely written notice of its intent to invoke issue preclusion.

Therefore, we conclude the issue preclusion amendment to supreme court rule 118.7 applies retroactively and its prerequisites are satisfied so that the doctrine may be applied in the pending disciplinary case before the grievance commission as far as those factors are concerned.

*V. Fairness of application of issue preclusion in the pending disciplinary case.* Respondent next contends the issue preclusion amendment should not, in all fairness, preclude relitigation of the issues of fraud, misrepresentation, breach of loyalty, and conflict of interest in the pending disciplinary case. The policy consideration raised by respondent is that it would be patently unfair to apply issue preclusion in the pending disciplinary case when the respondent did not have notice during the prior litigation that any judgments rendered in the litigation could, in the future, be used to conclusively prove a disciplinary case against him.

The Restatement (Second) of Judgments recognizes an exception to application of the issue preclusion doctrine in cases where the respondent can make a compelling showing of unfairness:

> [T]he court in the second proceeding may conclude that issue preclusion should not apply because the party sought to be bound did not have an adequate opportuni-

---

5. As previously mentioned, the Board's burden in a disciplinary proceeding is to prove its allegations by a *convincing* preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Wunschel*, 461 N.W.2d 840, 845 (Iowa 1990). In turn, court rule 118.7 requires that the burden of proof in the prior civil action sought to have preclusive effect in the subsequent disciplinary action must be greater than a mere preponderance of the evidence. Iowa Sup.Ct.R. 118.7

(as amended January 3, 1994). Proof of fraud against respondent in the prior civil case was satisfied by a preponderance of clear, satisfactory and convincing evidence. *See Cornell v. Wunschel*, 408 N.W.2d 369, 374 (Iowa 1987). Therefore, the "mere preponderance" requirement of court rule 118.7 is satisfied and does not serve as a bar to the application of issue preclusion in the pending disciplinary case.

ty or incentive to obtain a full and fair adjudication in the first proceeding. Such a refusal to give the first judgment preclusive effect should not occur without a compelling showing of unfairness, nor should it be based simply on a conclusion that the first determination was patently erroneous.

Restatement (Second) of Judgments § 28 cmt. j (1982).

■ We have stated the policy underpinnings of issue preclusion include preventing "needless relitigation" of issues previously decided in the interest of promoting "judicial economy." *Hunter*, 300 N.W.2d at 124. It is true at times the policy foundation of the doctrine may be perceived as placing efficiency before fairness, but this is a policy choice made when the doctrine was chosen to be employed:

> Application of the doctrine of collateral estoppel represents a decision that the needs of judicial finality and efficiency outweigh the possible gains of fairness or accuracy from continued litigation of an issue that previously has been considered by a competent tribunal. The advantages of finality, however, can only be fairly garnered when the party to be estopped has had an adequate opportunity to litigate his claims. Without such an opportunity, lack of faith in the reliability of the first proceeding precludes application of the collateral estoppel doctrine.

*Nasem v. Brown*, 595 F.2d 801, 806 (D.C.Cir. 1979) (citation omitted).

The United States Supreme Court addressed the issue of fairness in a case in which the Court approved of offensive use of the doctrine of issue preclusion. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In *Parklane Hosiery*, which was cited in *Hunter*, 300 N.W.2d at 124, the Court explored situations in which the application of offensive issue preclusion would be unfair:

> [An] argument against offensive use of collateral estoppel is that it may be unfair to a defendant. If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable. Allowing offensive collat-

eral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant. Still another situation where it might be unfair to apply offensive estoppel is where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.

*Parklane Hosiery*, 439 U.S. at 330–31, 99 S.Ct. at 651, 58 L.Ed.2d at 561–62 (citation omitted); *see* Restatement (Second) of Judgments § 28(3), (5). The Court stated district courts should have broad discretion in deciding when to allow the use of issue preclusion. *Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 651, 58 L.Ed.2d at 562; *Hunter*, 300 N.W.2d at 124. We have stated, however, that "[a]lthough offensive use of issue preclusion is allowed in Iowa, it is more restrictively and cautiously applied than defensive issue preclusion." *Buckingham v. Federal Land Bank Ass'n*, 398 N.W.2d 873, 876 (Iowa 1987) (citations omitted); *see also Hunter*, 300 N.W.2d at 124–25.

■ The Court in *Parklane Hosiery* decided none of the stated circumstances that might justify reluctance to allow the use of issue preclusion were present. *Parklane Hosiery*, 439 U.S. at 332, 99 S.Ct. at 652, 58 L.Ed.2d at 562–63. Likewise, even with *cautious* application of the doctrine, we believe the Board's use of issue preclusion to prove its disciplinary case against the respondent would not be unfair because (1) respondent, according to his answer to the Board's request for admissions, had every incentive to fully and vigorously litigate the previous action in which the Scharnbergs alleged fraud, misrepresentation, breach of loyalty and conflict of interest, (2) the previous judgment against respondent for fraud, legal malpractice, constructive fraud and conspiracy to defraud was not inconsistent with any previous decision, and (3) there will be in the disciplinary case against respondent no procedural opportunities available that were unavailable in the prior district court action of a kind that might be likely to cause a different result. *See* Grievance Comm'n R. 14. We believe this is not a case in which "[t]he risk

of unfairly imposed discipline is too great, and the economy to be gained too minimal, to warrant such an abridgement of the disciplinary process.'" *In re Owens,* 144 Ill.2d 372, 163 Ill.Dec. 479, 482, 581 N.E.2d 633, 636 (1991) (stating prior civil fraud judgment against attorney is admissible to prove subsequent disciplinary action for fraud) (quotation omitted).

Therefore, we conclude that the Board's use of issue preclusion in the pending disciplinary case would not be unfair to respondent.

■ VI. *Constitutionality of application of issue preclusion in the pending disciplinary case.* Relying on due process grounds, respondent next contends he is entitled to a full evidentiary hearing before the grievance commission without application of the doctrine of issue preclusion.

Without directly challenging the constitutionality of the issue preclusion amendment to rule 118.7, respondent argues the Fourteenth Amendment to the United States Constitution and article I, section 9 of the Iowa Constitution afford him a full opportunity to litigate the issues of fraud, misrepresentation, breach of loyalty and conflict of interest in the pending disciplinary case before the grievance commission. *See Committee on Professional Ethics & Conduct v. Hurd,* 360 N.W.2d 96, 100 (Iowa 1984).

Respondent relies on *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), to support his claim that he cannot be denied a hearing before the grievance commission on the issues of fraud, misrepresentation, breach of loyalty and conflict of interest that were previously litigated. Respondent's reliance on *Ruffalo* is misplaced. In *Ruffalo,* the Court held a lawyer was entitled to fair notice as to the reach of state disbarment proceedings commenced against him. *Id.* at 550, 88 S.Ct. at 1226, 20 L.Ed.2d at 122. According to the Court, "[t]he [disciplinary] charge must be known before the proceedings commence." *Id.* at 551, 88 S.Ct. at 1226, 20 L.Ed.2d at 122. In *Ruffalo,* at the time of the disbarment proceedings, the lawyer did not know he would be charged with misconduct and, therefore, the Court held Ruffalo was denied his proce-

dural due process rights. *Id.* at 552, 88 S.Ct. at 1226, 20 L.Ed.2d at 123. *Ruffalo* does not guarantee a hearing before the grievance commission on an issue already litigated and, more importantly, the case did not involve the potential preclusive effect of a prior district court judgment on proceedings before a grievance commission.

Unlike in *Ruffalo,* respondent was given proper notice of the ethics charges against him. This case, rather, involves how the Board is permitted to prove its case against respondent. Respondent has not been denied a hearing in the pending disciplinary action as, even if issue preclusion applies, he is not precluded from presenting mitigation evidence in his defense.

Therefore, we conclude that application of issue preclusion to the issues of fraud, misrepresentation, breach of loyalty, and conflict of interest in the pending disciplinary case will not violate respondent's procedural due process rights.

VII. *Offensive issue preclusion in the present action.* Finally, respondent contends the issues sought to be precluded from litigation before the grievance commission in the pending disciplinary case are not identical to those litigated in the previous district court civil action, were not necessary to the punitive damages award therein, and therefore do not satisfy the prerequisites for issue preclusion set forth in *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981).

■ To determine whether the doctrine of issue preclusion can be applied offensively by the Board in the pending disciplinary case to preclude relitigation of the issues of fraud, misrepresentation, breach of loyalty and conflict of interest, we must determine whether the Board established the four prerequisites necessary for utilization of the doctrine. The four prerequisites that the Board must establish are:

(1) the issue [sought to precluded in the subsequent action] must be identical [to the issue litigated in the prior action];

(2) the issue must have been raised and litigated in the prior action;

(3) the issue must have been material and relevant to the disposition of the prior action; and

(4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Hunter,* 300 N.W.2d at 123; *accord In re Marriage of Van Veen,* 545 N.W.2d 263, 266 (Iowa 1996).

We consider the issues sought to be precluded in turn.

■ 1. *Fraud and misrepresentation.* In the previous litigation resulting in a 1991 district court judgment against respondent, the Scharnbergs proved respondent committed fraud, legal malpractice, constructive fraud, and conspiracy to defraud against them during their attorney-client relationship. Recovery in a fraud action against an attorney is premised on the plaintiff's ability to show by a preponderance of clear, satisfactory and convincing evidence each of the following elements: (1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; and (7) resulting injury and damage. *Cornell v. Wunschel,* 408 N.W.2d 369, 374 (Iowa 1987).

Misrepresentation, or false representation, is an element of fraud. Like other elements of fraud, misrepresentation must be proven in a civil action by a preponderance of clear, satisfactory and convincing evidence. *See id.* Having found the respondent committed fraud, the district court necessarily found respondent made misrepresentations to his clients, the Scharnbergs.

After a full consideration of the record, we conclude

(1) the issues of fraud and misrepresentation sought to be precluded in the pending disciplinary action are identical to the issues of fraud and misrepresentation litigated in the prior district court action;

(2) the issues of fraud and misrepresentation were raised and litigated in the prior district court action;

(3) the issues of fraud and misrepresentation were material and relevant to the disposition of the prior district court action; and

(4) the district court's determination of the fraud and misrepresentation issues were necessary and essential to the resulting judgment of fraud against respondent.

The fraud claim and resulting judgment were the heart and soul of the district court's seventy-five page opinion. Respondent sets forth no plausible reason why he should be permitted to relitigate the fraud and misrepresentation issues in the pending disciplinary case before the grievance commission.

Therefore, we conclude the grievance commission was correct in ruling that respondent is precluded from litigating the issues of fraud and misrepresentation, in alleged violation of DR 1–102(A)(4) of the code of professional responsibility, in the pending disciplinary case before the grievance commission. *See* Iowa Sup.Ct.R. 118.7.

■ 2. *Breach of loyalty and conflict of interest.* The claims alleged against respondent in the Scharnbergs' district court action were fraud, legal malpractice, constructive fraud and conspiracy to defraud. In that litigation, Scharnbergs also alleged violations of disciplinary rules set forth in the Iowa code of professional responsibility in order to prove its civil fraud and legal malpractice case against respondent. We have approved of such a strategy in the past. *See Cornell,* 408 N.W.2d at 376–77.

The district court not only found respondent committed fraud against the Scharnbergs, the court also found respondent violated his duty of loyalty to his clients and failed to avoid a conflict of interest in violation of DR 5–104(A), DR 5–105(B), and DR 5–105(C) of the code of professional responsibility in the process of committing fraud. In the pending disciplinary case against respondent, the Board contends respondent is precluded from relitigating the issues of breach of loyalty and conflict of interest issues raised and decided in the previous litigation. We agree.

Proof of respondent's violation of the code of professional responsibility was a crucial aspect of the Scharnbergs' previous civil fraud and legal malpractice case against respondent. To prove respondent committed fraud against them, Scharnbergs were re-

quired to prove scienter. *See Cornell,* 408 N.W.2d at 375. A party may, as in *Cornell,* attempt to prove scienter by introducing evidence that the attorney violated certain duties set forth in the code of professional responsibility. *See id.* at 376–77. Proof of scienter can be satisfied when it is shown that "one of the parties has superior knowledge or a special situation, such as an attorney-client relationship, exists between the parties." *See id.* at 375. As we stated in *Cornell,* plaintiff's "reliance on the code of professional responsibility ... may be helpful to [an] assertion that [the attorney] was under a duty to disclose all material facts within his [or her] knowledge regarding the [investment at issue]." *Id.* at 376.

In the district court's judgment in the fraud litigation pursued by the Scharnbergs against respondent, the court held the Scharnbergs met their burden of proof on the scienter requirement of their fraud claim. Proof of this element was based on the Scharnbergs' allegations that respondent violated the code of professional responsibility. In fact, experts testified in the prior fraud litigation on the issue of respondent's alleged disciplinary rule violations.

The court held the scienter element of the fraud claim was satisfied because the respondent had superior knowledge concerning the investments recommended to the Scharnbergs, and an attorney-client relationship existed between him and the Scharnbergs at the time he gave investment advice to the Scharnbergs in 1984.

After a full consideration of the record, we conclude

(1) the issues of breach of loyalty and conflict of interest sought to be precluded in the subsequent disciplinary action are identical to the issues of breach of loyalty and conflict of interest litigated in the prior district court action;

(2) the issues of breach of loyalty and conflict of interest were raised and litigated in the prior district court action; [6]

(3) the issues of breach of loyalty and conflict of interest were material and relevant to the disposition of the prior district court action; and

(4) the district court's determination of the issues of breach of loyalty and conflict of interest was necessary and essential to the resulting judgment of fraud against respondent.

Therefore, we conclude the grievance commission was correct in ruling that respondent is precluded from relitigating the issues of breach of loyalty and conflict of interest, in alleged violation of DR 5–104(A), DR 5–105(B), and DR 5–105(C), in the pending disciplinary case before the grievance commission. *See* Iowa Sup.Ct.R. 118.7.

VIII. *Effect of the 1991 punitive damages judgment on the issues presented in the present appeal.* Much has been made by the parties concerning what effect the punitive damages award included in the 1991 civil judgment has on the application of issue preclusion in the pending disciplinary case. Based on the issues sought to be precluded from relitigation in the subsequent disciplinary action, we believe the punitive damage judgment has no relevance to the material issues presented in this present interlocutory appeal.

In deciding whether to apply issue preclusion in subsequent litigation, the focus is on what *issues* were actually decided in the prior litigation and what issues a party in subsequent litigation seeks to have precluded. The issues decided in the 1991 civil judgment against respondent were:

(1) fraud (*including* findings of misrepresentation and violations of the Iowa code of professional responsibility);

(2) legal malpractice;

6. Respondent admitted, in his answers to the Board's request for admissions, that he had a full and fair opportunity to litigate the issue of whether he breached his ethical duties to his clients, the Scharnbergs. *See Hunter,* 300 N.W.2d at 126 ("The record discloses nothing from which it could be inferred that the city lacked a full and fair opportunity in the prior action to litigate the issues in question. Indeed, there is no indication that a vigorous defense was not undertaken with respect to those issues."). After this full opportunity to litigate the issues, respondent accepted the district court's final judgment without filing a notice of appeal.

(3) constructive fraud;

(4) conspiracy to defraud;

(5) actual damages; and

(6) punitive damages.

These were admittedly separate issues presented for the district court's resolution. The court's conclusions on issues (1)–(5) were made independent from the court's ruling on Scharnbergs' request for punitive damages. It was only after Scharnbergs proved one or more of the other issues, including actual damages, that the court considered awarding punitive damages. *See Pringle Tax Serv., Inc. v. Knoblauch,* 282 N.W.2d 151, 154 (Iowa 1979) (actual damages must be shown or established before punitive damages may be awarded); *Woods v. Schmitt,* 439 N.W.2d 855, 870 (Iowa 1989) (punitive damages are permissible when a defendant is guilty of malice, fraud, gross negligence, or an illegal act).

Although the district court's conclusions on issues (1)–(5) were definitely relevant concerning the court's decision to award Scharnbergs punitive damages in the prior litigation, we find the opposite is not true; that is, the court's punitive damages judgment had no relevance concerning the court's decision to rule in favor of or against the Scharnbergs on issues (1)–(5).

We conclude, therefore, for purposes of the present interlocutory appeal concerning *only* application of issue preclusion in the pending disciplinary case, the punitive damages judgment is irrelevant on the issue of whether respondent should be precluded from relitigating fraud, misrepresentation, breach of loyalty, and conflict of interest. Our conclu-sion today that issue preclusion applies in the pending disciplinary case is neither bolstered nor inhibited by the district court's punitive damages judgment against respondent.

IX. *Disposition.* We find other contentions raised by the parties to be without merit or irrelevant to the issues decided above.

We affirm the grievance commission's ruling on respondent's motion for adjudication of law points.

We conclude the issue preclusion amendment to supreme court rule 118.7 applies both prospectively and retroactively and application of the doctrine in the pending disciplinary case would not be unfair or violate respondent's procedural due process rights.

Respondent is barred by the doctrine of issue preclusion from relitigating the issues of fraud, misrepresentation, breach of loyalty and conflict of interest, in alleged violation of DR 1–102(A)(4), DR 5–104(A), DR 5–105(B), and DR 5–105(C) of the code of professional responsibility, in the pending disciplinary action before the grievance commission. As stated by the commission in its ruling, respondent is, however, permitted to present evidence of mitigating facts and circumstances in the upcoming hearing concerning any sanction to be imposed.

**AFFIRMED.**