IN THE SUPREME COURT OF IOWA

 No. 145 / 05-0097

 Filed January 27, 2006

JOE COMES and RILEY PAINT, INC.,
an Iowa Corporation,

 Appellees,

vs.

MICROSOFT CORPORATION,
a Washington Corporation,

 Appellant.

________________________________________________________________________
 Appeal from the Iowa District Court for Polk County, Artis I. Reis,
Judge.

 Defendant appeals from the district court’s ruling that collateral
estoppel would apply to findings of fact arising from prior federal
antitrust litigation. Reversed and Remanded with Instructions.

 Edward W. Remsburg of Ahlers & Cooney, P.C., Des Moines, Thomas
W. Burt, Richard J. Wallis, and Steven J. Aeschbacher, Redmond Washington,
David B. Tulchin, Joseph E. Neuhaus, and Richard C. Pepperman II, of
Sullivan & Cromwell, LLP, New York, New York, and Charles B. Casper of
Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, Pennsylvania,
for appellant.

 Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C.,
Des Moines, and Richard M. Hagstrom of Zelle, Hofmann, Voelbel, Mason &
Gette LLP, Minneapolis, Minnesota, for appellees.
STREIT, Justice.
 Justice Felix Frankfurter once observed, “to some lawyers, all facts
are created equal.” However, for the purposes of collateral estoppel, they
are not. The defendant, Microsoft Corporation, was granted permission to
take an interlocutory appeal from the district court’s ruling that
collateral estoppel would apply to 352 findings of fact arising from prior
federal antitrust litigation. Because we find the district court’s
application of the “necessary and essential” requirement of collateral
estoppel was too broad, we reverse the district court’s order and remand
with instructions.
 I.  Facts and Prior Proceedings
 Joe Comes and Riley Paint sued Microsoft Corporation for violating
provisions of the Iowa Competition Law. See Iowa Code §§ 553.4, 553.5
(1997). This is the third time this case has journeyed into this court.
See Comes v. Microsoft Corp., 696 N.W.2d 318 (Iowa 2005) (finding
plaintiffs established the prerequisites for class certification); Comes v.
Microsoft Corp., 646 N.W.2d 440 (Iowa 2002) (holding indirect purchasers
may maintain an antitrust suit against Microsoft). The facts were set out
fully in our first decision, and we now state only those facts necessary
for this appeal.
 In the spring of 1998, the United States and several states (including
Iowa) filed a civil action against Microsoft Corporation in the District of
Columbia for violations of the Sherman Act (hereinafter the “Government
Action”). A bench trial before Judge Thomas Jackson lasted 76 days and
included testimony from 26 live witnesses, deposition excerpts from 79
additional witnesses, and over 2700 exhibits. Rather than issue one
decision and judgment, Judge Jackson bifurcated his decision by first
making 412 findings of fact “proved by a preponderance of the evidence.”
See generally United States v. Microsoft Corp., 84 F. Supp. 2d 9 (D.D.C.
1999). Five months later, Judge Jackson entered his decision concluding
Microsoft (1) illegally maintained a monopoly in the market of licensing
Intel-compatible PC operating systems, (2) attempted to monopolize the web
browser market, and (3) entered into an illegal tying arrangement by
bundling its Internet Explorer web browser with its Windows operating
system, in violation of sections 1 and 2 of the Sherman Act. United States
v. Microsoft Corp., 87 F. Supp. 2d 30, 35, 44 (D.D.C. 2000). This decision
did not refer to a large number of the factual findings entered five months
earlier.
 Microsoft appealed this decision, and the United States Court of
Appeals for the District of Columbia affirmed Judge Jackson’s conclusion
that Microsoft illegally maintained a monopoly in the PC operating systems
market. United States v. Microsoft Corp., 253 F.3d 34, 80 (D.C. Cir.
2001). However, the D.C. Circuit reversed the attempted monopolization
claim and remanded the claim of illegally tying the Internet Explorer web
browser to Windows for a new trial. Id. at 94. The D.C. Circuit also
vacated the district court’s remedy and disqualified Judge Jackson for
ethical violations related to his discussion of the merits of the case with
reporters. Id. at 117. On remand, the case was reassigned to Judge Kollar-
Kotelly. Judge Kollar-Kotelly rejected almost all of the additional
remedies requested by the states and determined many of Judge Jackson’s 412
findings of fact “were ultimately not relied upon by the district court in
conjunction with the imposition of liability for violation of § 2 of the
Sherman Act.” New York v. Microsoft Corp., 224 F. Supp. 2d 76, 138 (D.D.C.
2002).
 In the present case, the class of plaintiffs alleges Microsoft
maintained or used a monopoly in conjunction with its Windows 98 operating
system for the purpose of excluding competition or controlling, fixing, or
maintaining prices in violation of Iowa Code sections 553.4 (prohibiting
restraint of trade) and 553.5 (“A person shall not attempt to establish or
establish, maintain, or use a monopoly of trade or commerce in a relevant
market for the purpose of excluding competition or of controlling, fixing,
or maintaining prices.”). These allegations are based in part on the
factual findings and conclusions made in the Government Action. In July of
2004, the plaintiffs filed a motion requesting the court use the doctrine
of collateral estoppel to foreclose Microsoft from relitigating 352 of the
412 factual findings made in the Government Action.
 The district court granted this motion through a pretrial order
applying the doctrine of “offensive” collateral estoppel to preclude
Microsoft from relitigating the 352 factual findings. We granted
Microsoft’s application for leave to appeal the district court’s ruling.
 The overarching issue in this appeal is whether the district court
correctly applied the requirement that facts subject to collateral estoppel
be “necessary and essential” to the judgment in the prior litigation.
Microsoft contends the court’s misapplication of this standard led to an
overbroad ruling in which preclusive effect was given to 336 factual
findings that were not “necessary and essential” to the judgment.[1]
 II.  Standard of Review
 Because this appeal is premised upon the district court’s application
of an incorrect legal standard, our review is for error. See Walters v.
Herrick, 351 N.W.2d 794, 796 (Iowa 1984) (stating, as a general rule, an
“assertion that an incorrect legal standard was applied is reviewed on
error”).
 III.  Merits
 The doctrine of collateral estoppel, sometimes referred to as issue
preclusion, prevents parties from relitigating issues previously resolved
in prior litigation if certain prerequisites are established. Hunter v.
City of Des Moines, 300 N.W.2d 121, 123 (Iowa 1981). In general,
collateral estoppel prevents parties to a prior action in which judgment
has been entered from relitigating in a subsequent action issues raised and
resolved in the previous action. Id. This doctrine may be utilized in
either a defensive or offensive manner. Id. Defensive use of the doctrine
is when “a stranger to the judgment, ordinarily the defendant in the second
action, relies upon a former judgment as conclusively establishing in his
favor an issue which he must prove as an element of his defense.” Id.
Offensive use of the doctrine is when “a stranger to the judgment,
ordinarily the plaintiff in the second action, relies upon a former
judgment as conclusively establishing in his favor an issue which he must
prove as an essential element of his cause of action or claim.” Id.
 This case involves offensive use of the collateral estoppel doctrine.
The plaintiffs, who were strangers to the first judgment, seek to rely upon
the prior judgment that Microsoft had maintained an operating system
monopoly by anticompetitive means and ask the court to accord preclusive
effect to 352 of the 412 findings of fact entered in the Government Action.

 Collateral estoppel may be invoked if four prerequisites are met:

 (1) the issue concluded must be identical; (2) the issue must have
 been raised and litigated in the prior action; (3) the issue must have
 been material and relevant to the disposition of the prior action; and
 (4) the determination made of the issue in the prior action must have
 been necessary and essential to the resulting judgment.

Id. The fighting issue in this case involves the application of the fourth
prerequisite to the findings of fact entered in the Government Action.
 Admittedly, the fourth requirement of our collateral estoppel
analysis—the determination made of the issue in the prior action must have
been necessary and essential to the resulting judgment—is exceedingly
vague. However, prior cases demonstrate that we apply this requirement
somewhat narrowly.
 Almost 150 years ago, long before we articulated the present
collateral estoppel analysis, we said “[m]atters which arise only
incidentally in the evidence, however much they may influence the mind of
the judge or jury in arriving at a conclusion, are not matters
adjudicated.” Haight v. City of Keokuk, 4 Clarke 199, 208 (Iowa 1857)
(emphasis in original).
 In Hutchinson v. Maiwurm, 162 N.W.2d 408, 410-11 (Iowa 1968), we
prefaced our analysis of a case involving the collateral estoppel doctrine
by stating “a judgment is not binding or conclusive as to facts or
questions of law, although put in issue and actually tried and expressly
determined by the court in the former action, where such matters were
immaterial or unessential to the determination of the real and decisive
issue.” In applying this standard to the facts of the case, we looked to
other jurisdictions for guidance. Hutchinson, 162 N.W.2d at 411-12. In
particular, we considered a Wyoming case, where a factual finding that was
not “vital to the case” and was “not the point upon which the case turned”
was not given estoppel effect. Id. at 412 (citing Willis v. Willis, 49
P.2d 670, 677 (Wyo. 1935), overruled on other grounds by Shaw v. Smith, 964
P.2d 428 (Wyo. 1998)). In another case, the Supreme Court of New Mexico
did not grant estoppel effect to a prior court’s conclusions of fact
because the facts “were not ultimate facts . . . without which the
[previous] judgment would lack support in an essential particular.” Id. at
413 (citing State v. Nance, 419 P.2d 242, 245 (N.M. 1966)). On the
strength of these decisions, we decided in Hutchinson that the findings and
conclusions in the previous action did not satisfy the doctrine of
collateral estoppel and were therefore not subject to estoppel effect. Id.
 In Supreme Court Board of Ethics v. D.J.I., 545 N.W.2d 866 (Iowa
1996), we analyzed the “necessary and essential” requirement in the context
of an attorney ethical violation proceeding. In D.J.I., an attorney
subject to a disciplinary proceeding based on unethical dealings with his
clients sought to relitigate whether he had violated various provisions of
the Iowa Code of Professional Responsibility, even though that question had
been decided in an earlier civil proceeding. 545 N.W.2d at 868-69. In the
earlier civil proceeding, two former clients alleged the attorney had
violated several professional rules and committed civil fraud and legal
malpractice. Id. at 869. The district court, in a bench ruling, concluded
the attorney committed fraud, legal malpractice, constructive fraud, and
conspiracy to defraud. Id. In so ruling, the court found the former
clients proved the scienter element of their fraud claim because the
attorney had violated lawyer disciplinary rules concerning conflicts of
interests. Id. The attorney did not appeal the adverse decision. Id. An
ethical complaint was subsequently filed against the attorney for his
representation of the same clients. Id. The Iowa Supreme Court Board of
Professional Ethics and Conduct relied on the principles of issue
preclusion to prove these same ethical violations. Id. at 870. The
attorney argued the district court’s conclusion in the previous civil
proceeding that he had violated the Iowa Code of Professional
Responsibility was “not necessary and essential to the issues determined in
the resulting judgment.” Id. We disagreed. We noted: “[r]ecovery in a
fraud action against an attorney is premised on the plaintiff’s ability to
show . . . the following elements: (1) representation; (2) falsity; (3)
materiality; (4) scienter; (5) intent to deceive. . . .” We concluded the
disciplinary code violations were “crucial” to the previous civil fraud and
legal malpractice case against the attorney because the violations were the
evidence used by the former clients to prove the scienter element of their
civil fraud claim. Id. at 875-76 (emphasis added).
 These cases illustrate that we apply the necessary and essential
requirement narrowly, and only preclude those facts vital or crucial to the
previous judgment, or those properly characterized as ultimate facts
without which the previous judgment would lack support. See generally id.;
Hutchinson, 162 N.W.2d at 412-13.
 IV.  Analysis of the District Court’s Ruling
 At the outset, the district court correctly recited the necessary and
essential requirement—“When issues of law or fact were raised and litigated
and relevant to the prior proceeding, collateral estoppel precludes
relitigation when the determination of those issues was also necessary and
essential to the judgment in the earlier action.” The court then set forth
the legal standard for monopolization claims used by the D.C. Court of
Appeals in the Government Action and identified approximately two and a
half pages of legal conclusions that “survived intact” after the D.C. Court
of Appeals modified the district court’s judgment in the Government Action.
 However, when the court determined 352 out of the 412 findings of fact
“were necessary and essential to the elements of the government’s
monopolization claim against Microsoft” because these findings “provided a
proper foundation” or “proper basis” for individual elements of the
monopolization claim in the Government Action, the court’s interpretation
of our collateral estoppel doctrine drifted away from the doctrine’s
original intent.
 The district court’s first precluded finding of fact illustrates that
the necessary and essential requirement was misapplied:

 A “personal computer” (“PC”) is a digital information processing
 device designed for use by one person at a time. A typical PC
 consists of central processing components (e.g., a microprocessor and
 main memory) and mass data storage (such as a hard disk). A typical
 PC system consists of a PC, certain peripheral input/output devices
 (including a monitor, a keyboard, a mouse, and a printer), and an
 operating system. PC systems, which include desktop and laptop
 models, can be distinguished from more powerful, more expensive
 computer systems known as “servers,” which are designed to provide
 data, services, and functionality through a digital network to
 multiple users.

This finding is clearly not a fact “upon which the case turned” and it is
not a fact one would deem vital or crucial to the ultimate issue
precluded—that Microsoft violated the antitrust laws for unlawful monopoly
maintenance of operating systems from the period of 1995-1998. See D.J.I.,
545 N.W.2d at 875; Hutchinson, 162 N.W.2d at 412-13. This finding is a
subsidiary fact the parties could readily establish through testimony at
trial, a request for admission, or a pretrial stipulation of facts.[2] It
is not a fact crucial or vital to the ultimate issue in the previous case.
 Before a court applies collateral estoppel offensively, the court must
also consider whether treating an issue or fact as conclusively determined
will complicate the determination of other issues in the subsequent action
or prejudice the interests of the defending party. Hunter, 300 N.W.2d at
125.
 A lengthy list of subsidiary facts granted preclusive effect could be
very prejudicial to a defendant. Application of collateral estoppel to
every subsidiary matter actually litigated in a prior proceeding greatly
increases the hazards in trying the first lawsuit as well as the hazards of
misuse in a subsequent lawsuit because “[l]ogical relevance is of infinite
possibility,” and an innocuous fact in the first proceeding could be used
as a critical fact against the defendant in a second proceeding. See
Evergreens v. Nunan, 141 F.2d 927, 929 (2d Cir. 1944). Along with the
inherent danger that preclusive effect will be given to determinations of
issues that were not seriously contested and may have been barely relevant
in the first proceeding, a long list of isolated findings could confuse or
mislead the jury. See Coburn v. Smithkline Beecham Corp., 174 F. Supp. 2d
1235, 1241 (D. Utah 2001) (finding “the risk of prejudice and confusion
significantly outweighs any benefit that might be derived from applying
collateral estoppel” to an isolated factual finding); see also Whelan v.
Abell, 953 F.2d 663, 669 (D.C. Cir. 1992) (accepting the district court’s
decision to reject a broad application of collateral estoppel for fear of
“unduly swaying or confusing the jury” and distorting the resolution of
other issues). A brief review of the 336 findings of fact reveals an
inordinate number of such findings. These subsidiary facts may or may not
have been seriously contested in the Government Action and therefore could
unfairly prejudice the defendant in the present case by unduly influencing
the jury.
 Because the court did not properly apply the necessary and essential
standard and did not properly consider the potential prejudice inherent in
such a large list of subsidiary facts, we reverse the district court’s
order granting preclusive effect to these factual findings.
 V.  Directions for Remand
 Our necessary and essential requirement parallels the standard set
forth in the first Restatement of Judgments, which stated collateral
estoppel is “applicable to the determination of facts in issue, but not to
the determination of merely evidentiary facts, even though the
determination of the facts in issue is dependent upon the determination of
the evidentiary facts.” Restatement of Judgments § 68 cmt. p (1942).
Judge Learned Hand stated this distinction more succinctly when he wrote:

 [A] “fact” may be of two kinds. It may be one of those facts,
 upon whose combined occurrence the law raises the duty, or the right,
 in question; or it may be a fact, from whose existence may be
 rationally inferred the existence of one of the facts upon whose
 combined occurrence the law raises the duty, or the right. The first
 kind of fact we shall for convenience call an “ultimate” fact; the
 second, a “mediate datum.” “Ultimate” facts are those which the law
 makes the occasion for imposing its sanctions.

Evergreens, 141 F.2d at 928.
 This section was significantly altered in 1982 by the Second
Restatement of Judgments. The second Restatement rejected rote application
of the ultimate fact/evidentiary fact analysis because, even if a fact is
properly categorized as evidentiary, “great effort may have been expended
by both parties in seeking to persuade the adjudicator of its existence or
nonexistence and it may well have been regarded as the key issue in the
dispute.” Restatement (Second) of Judgments § 27 cmt. j (1982). The
second Restatement replaced its comment discussing the distinction between
ultimate and evidentiary facts with a new analysis where the court must
determine “whether the issue was actually recognized by the parties as
important and by the trier as necessary to the first judgment.” Id.
(emphasis added). This “important and necessary” analysis protects parties
from the dangers of innocuous, subsidiary facts because it only precludes
such facts as were truly disputed in the first proceeding. Or, as aptly
stated by the First Circuit Court of Appeals,

 [w]hen two adversaries concentrate in attempting to resolve an issue
 importantly involved in litigation, there is no unfairness in
 considering that issue settled for all time between the parties and
 those in their shoes. But . . . it is unfair to close the door to
 issues which have not been on stage center, for there is no knowing
 what the white light of controversy would have revealed.

Farmington Dowel Prods. Co. v. Forster Mfg. Co., 421 F.2d 61, 79 (1st Cir.
1970).
 Because this analysis protects against the dangers stemming from
preclusion on subsidiary facts, we adopt this analysis as well. Rather
than pigeonholing facts as evidentiary or ultimate, courts must determine
whether the issue was actually recognized by the parties as important and
by the adjudicator as necessary to the first judgment. Under this
analysis, collateral estoppel will only adhere to those factual findings
necessary and essential to the prior judgment, rather than findings of
every minute fact contested by the parties in the previous trial.
 As noted above, the parties agree 16 of the 352 factual findings
granted preclusive effect by the district court were necessary and
essential to the underlying judgment. For example, findings 33 and 34
hold:

 33.  Microsoft enjoys so much power in the market for Intel-
 compatible PC operating systems that if it wished to exercise this
 power solely in terms of price, it could charge a price for Windows
 substantially above that which could be charged in a competitive
 market. Moreover, it could do so for a significant period of time
 without losing an unacceptable amount of business to competitors. In
 other words, Microsoft enjoys monopoly power in the relevant market.

 34.  Viewed together, three main facts indicate that Microsoft
 enjoys monopoly power. First, Microsoft’s share of the market for
 Intel-compatible PC operating systems is extremely large and stable.
 Second, Microsoft’s dominant market share is protected by a high
 barrier to entry. Third, and largely as a result of that barrier,
 Microsoft’s customers lack a commercially viable alternative to
 Windows.

Both of these findings were necessary and essential to the underlying
judgment because the court had to establish Microsoft had monopoly power
before it could conclude Microsoft maintained monopoly power. These
findings were also important because both parties debated the relevant
market and Microsoft’s monopoly power in that market.
 Because the district court failed to apply the proper standard in
evaluating plaintiffs’ collateral estoppel claims, we reverse its order.
The case is remanded to that court for a reconsideration of this issue
under the standard that we have articulated, aided by the more
particularized arguments that will now be available to counsel as the
result of our clarification of the rule of law to be applied. On remand,
the parties herein will have the opportunity to convince the court which
facts were actually recognized by the parties in the Government Action as
the key issues in dispute and by the adjudicator as necessary to the final
judgment.
 VI. Conclusion
 Because the district court’s application of the “necessary and
essential” requirement of collateral estoppel was too broad, we reverse the
district court’s order and remand for further proceedings in conformance
with this opinion.
 Reversed and Remanded with Instructions.

-----------------------
 [1]The parties agree 16 of the 352 factual findings were necessary and
essential to the D.C. Circuit’s judgment. The sixteen findings of the
judgment are set forth in paragraphs 18, 33-34, 161, 164, 170, 213, 244-45,
339, 350-52, 394, 401, and 406.
 [2]This court is cognizant of the difficulty in presenting this case
at trial and an underlying motivation of Comes to start this case with a
panoply of facts that are deemed established—facts that do not need further
proof. These findings would provide a broad landscape of facts upon which
to park this case. Given the size of this litigation, it is enticing to
start this case with a foundation of basic facts. However, as explained
herein, such is not the purpose of collateral estoppel.